Opinion issued July 3, 2008
 






 











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-07-00414-CR
__________
 
BRANDON KIRK LAIR, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1105077
 

 
 
DISSENTING OPINION
          The majority erroneously concludes that the evidence presented by the State
to the jury below is legally sufficient to support the conviction of appellant, Brandon
Kirk Lair, of the offense of possession of a controlled substance, namely
methylenedioxy methamphetamine (commonly referred to as “MDMA” or “ecstasy”),
weighing between 4 and 400 grams.


 
          The majority’s decision and the reasoning in its opinion is in contradiction of 
well-settled law and our sound application of the links rule in Roberson v. State, 80
S.W. 3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). The majority,
albeit unwittingly, significantly erodes the protection that the links rule affords
bystanders from conviction based solely upon fortuitous proximity to another’s
contraband. See Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). 
Accordingly, I respectfully dissent.  Factual Background
          Federal Bureau of Investigation Special Agent John Chiue, who was working
on an organized crime task force with officers from the Houston Police Department,
testified that he had received information that a strip shopping center, which
contained a pool hall and bar, was a “hot spot” for criminal activity. On September
21, 2006, at 9:00 p.m., he conducted surveillance at the shopping center, and, as he
sat in his unmarked car in the shopping center parking lot, Chiue saw an Asian male,
later identified as Son Hoang, park a green Honda in the space next to Chiue’s car. 
          Agent Chiue explained that he then saw Hoang exit the Honda and “he had a
sandwich, kind of like a brown sack, sandwich sack, and he walked over to a vehicle,
which was in the parking lot.” The sack was “wadded up.” Chiue, who had to look
behind from where he was positioned, saw Hoang approach two black males, later
identified as appellant and Triston Davis, who had exited a red Dodge Magnum,
which was parked about six car lengths away from Chiue’s car. Although Chiue’s
view was “partially blocked” at this point, Chiue saw all three men enter the Dodge. 
After “approximately 30 seconds,” Chiue saw Hoang exit the Dodge “from the
backseat” and return to his Honda “empty handed.” The men in the Dodge then drove
away. A “short time later,” another Asian male came out of the pool hall and entered
Hoang’s Honda. Chiue, who was parked right next to them, then saw the second
Asian male who had entered Hoang’s Honda counting “paper money.” 
          Given his observations, Agent Chiue suspected that a narcotics transaction may
have occurred because Hoang had been carrying the brown sandwich sack “wadded
up” and was not carrying the sack as one might usually carry a sandwich. In Chiue’s
opinion, this conduct was consistent with a “hand-to-hand drug transaction.” He
radioed Houston Police Sergeant Michael Landry, who was working with Chiue, and
told him that a narcotics transaction might have occurred. 
          On cross-examination, Agent Chiue agreed that his surveillance was random,
he had never heard of appellant, Davis, or Hoang, and he did not see what happened
inside the Dodge. He conceded that he did not see anything change hands while the
three men were in the Dodge. Chiue did not see appellant “touch” or “look inside”
the brown sack, hand over any money, act nervous, drive in a dangerous manner, or
use a cellular telephone or beeper. He also did not know where the money that he
saw the second Asian male count in Hoang’s Honda actually came from. 
Specifically, Chiue conceded that the money could have come from the pool hall and
that he could not testify that the money came from the Dodge. He also admitted that
“anything” could have been delivered in the brown sandwich sack and that the
delivery of the sack, by itself, could be consistent with both innocent and criminal
activity.
          Sergeant Landry testified that, on the night in question, he was parked one
block north of the parking lot when he saw the Dodge, occupied by two black males,
pull into the center’s parking lot. He received a radio communication from Agent
Chiue about what was happening in the parking lot, and, when the Dodge left the
parking lot, Landry and other police officers followed it for ten to fifteen minutes. 
After the driver of the Dodge committed a traffic violation, officers in a marked patrol
car stopped the Dodge.
          When the police officers asked appellant, who was the driver of the Dodge, to
get out of the car, appellant “immediately” complied with the officers’ instructions,
and they placed appellant in the rear of their patrol car. On the other hand, the
officers had to ask Davis, who was the passenger in the Dodge, “several times” to
exit the car before he complied. Sergeant Landry noted that Davis was “very
nervous,” and, as Davis got out of the Dodge, “his elbow hit the console,” which was
between the bucket seats. The console then “clicked as if it had not been shut
completely.” Landry then opened the console and found a brown sandwich sack as
described by Agent Chiue. Inside of the sack, Landry found three plastic bags
containing blue pills, which were later confirmed to be 1000 ecstasy pills, weighing
approximately 238 grams. 
          Contrary to Agent Chiue’s testimony, Sergeant Landry, on cross-examination,
testified that it was his understanding, based on Chiue’s radio communications to
him, that Chiue did not see Hoang enter the Dodge. Rather, Chiue saw Hoang hand
the brown sandwich sack “through the passenger’s window” of the car in a
transaction that lasted between “15 to 20 seconds.” 
          Sergeant Landry conceded that he did not know whether appellant or Davis
knew Hoang before their transaction, appellant was not driving dangerously, and
Landry did not believe that appellant or Davis knew that they were being followed
by police officers. He further agreed that when the officer in the patrol car activated
his emergency lights, appellant pulled over, followed the officers’ instructions, did
not appear to be under the influence of any narcotics, did not attempt to flee, and
“promptly” and “courteously” complied with the officers’ instructions to get out of
the car. Landry further conceded that, compared to Davis, appellant appeared
relaxed. Landry did not see appellant make any furtive movements, put his hands or
anything in the console, or touch the brown sandwich sack. Moreover, although
Hoang’s fingerprints were found on the plastic bags inside the sack, appellant’s
fingerprints were not found on the plastic bags. Landry also agreed that ecstasy does
not have a distinctive odor. Although appellant had one cellular telephone, he did not
have any weapons, beepers, or a large amount of cash. 
          Sergeant Landry also conceded that he had not heard anything to prove that
appellant had participated in any negotiations with Hoang or that appellant had even
touched or looked inside of the brown sandwich sack that contained the narcotics. 
When asked if he had any reason to believe that appellant knew what was in the sack,
Landry responded that appellant was the owner of the Dodge and that he would think
that appellant “would know what was coming into his vehicle.” Landry agreed that
the Dodge was registered to another person, but maintained that, because appellant
had care and custody of the car, appellant was the owner of the car at that point in
time.
Standard of Review
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). The Texas
Supreme Court has explained the well-settled law that we must sustain a legal
sufficiency or “no-evidence” challenge if the record shows one of the following: (1)
a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the
court from giving weight to the only evidence offered to prove a vital fact, (3) the
evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence
establishes conclusively the opposite of the vital fact. City of Keller v. Wilson, 168
S.W.3d 802, 810 (Tex. 2005). Evidence does not exceed a scintilla if it does no more
than create a mere surmise


 or suspicion


 that a fact exists. Ford Motor Co. v.
Ridgway, 135 S.W.3d 598, 601 (Tex. 2004). If the evidence at trial would enable
reasonable and fair-minded people to differ in their conclusions, then jurors must be
allowed to do so. City of Keller, 168 S.W.3d at 822. However, if the undisputed facts
allow only one logical inference, neither jurors nor the reviewing court may disregard
those facts. Id.; see Evans v. State, 202 S.W.3d 158, 162–63 (Tex. Crim. App. 2006).
          In conducting a legal sufficiency review, an appellate court must be mindful
that the trier of fact is the sole judge of the weight and credibility of the evidence. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when
performing the review, the court may not reevaluate the weight and credibility of the
evidence and substitute its judgment for that of the fact-finder. Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999). The court must resolve any inconsistencies
in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex.
Crim. App. 2000). Legal Sufficiency
          In his first point of error, appellant argues that the evidence is legally 
insufficient to support his conviction because the State presented no evidence that he
exercised care, custody, control, or management over the narcotics or that he knew
the brown sandwich sack contained narcotics.


 
          A person commits the offense of possession of a controlled substance in an
amount of more than 4 grams but less than 400 grams, if he knowingly or
intentionally possesses the controlled substance in the prescribed amount, by
aggregate weight, including adulterants or dilutants. See Tex. Health & Safety
Code Ann. §§ 481.103(a)(1) (Vernon Supp. 2007), 481.116(d) (Vernon 2003). 
          “Possession” means “actual care, custody, control, or management.” Tex.
Penal Code Ann. § 1.07(39) (Vernon Supp. 2007). Moreover, possession is a
voluntary act “if the possessor knowingly obtains or receives the thing possessed or
is aware of his control of the thing for a sufficient time to permit him to terminate his
control.” Id. § 6.01(b) (Vernon 2003). Accordingly, in a possession of a controlled
substance prosecution, the State must prove that (1) the accused exercised control,
management, or care over the substance, and (2) the accused knew that the matter
possessed was a controlled substance. Evans, 202 S.W.3d at 161.
          Here, although appellant was the driver of the Dodge in which the brown
sandwich sack containing the narcotics was found, he was not in exclusive possession
of the car. Davis was also present in the Dodge as a passenger, also seated next to the
console containing the brown sack, and actually contacted the console upon exiting
the car. In such circumstances, this Court has explained,
When, as here, the accused is not in exclusive possession of the place
where contraband is found, there must be additional independent facts
and circumstances which affirmatively link the [accused] to the
contraband in such a way that it can be concluded that the accused had
knowledge of the contraband and exercised control over it. . . . An
affirmative link [is one that] generates a reasonable inference that the
accused knew of the contraband’s existence and exercised control over
it. . . . Proof of an affirmative link between the accused and the
contraband is mainly needed to establish knowledge or intent.

Roberson, 80 S.W.3d at 735 (citations omitted) (emphasis added). In short,
“[w]hether this evidence is direct or circumstantial, ‘it must establish, to the requisite
level of confidence, that the accused’s connection with the drug was more than just
fortuitous.’” Poindexter, 153 S.W.3d at 405–06. This “is the whole” of the so-called
“links” rule. Id. at 406.
          The Texas Court of Criminal Appeals has explained that the purpose of the
links rule is to “protect the innocent bystander from conviction based solely upon his
fortuitous proximity to someone else’s [narcotics].” Id. The links rule “simply
restates the common-sense notion that a person—such as a father, son, spouse,
roommate, or friend—may jointly possess property like a house but not necessarily
jointly possess the contraband found in that house.” Id. (emphasis added). Thus,
“[w]hen the accused is not in exclusive possession of the place where the substance
is found, it cannot be concluded that the accused had knowledge of and control over
the contraband unless there are additional independent facts and circumstances which
affirmatively link the accused to the contraband.” Id. 
          Texas courts have identified “many non-exhaustive factors” that may
demonstrate a link to contraband. Roberson, 80 S.W.3d at 735. These factors
constitute “a shorthand way of expressing what must be proven to establish that
[narcotics] were possessed knowingly.” Id. The number of linking factors present
is not as important as the “logical force” they create to prove that an offense was
committed. Id. These links include (1) the accused’s presence when a search is
conducted, (2) whether the narcotics were in plain view, (3) the accused’s proximity
to and the accessibility of the narcotics, (4) whether the accused was under the
influence of narcotics when arrested, (5) whether the accused possessed other
contraband or narcotics when arrested, (6) whether the accused made incriminating
statements when arrested, (7) whether the accused attempted to flee, (8) whether the
accused made furtive gestures, (9) whether there was an odor of contraband or
narcotics, (10) whether other contraband or narcotic paraphernalia was present, (11)
whether the accused owned or had the right to possess the place where the narcotics
were found, (12) whether the place in which the narcotics were found was enclosed,
(13) whether the accused was found with a large amount of cash, and (14) whether
the conduct of the accused indicated a consciousness of guilt. Evans, 202 S.W.3d at
162 n.12. 
          In Roberson, we applied these factors against a defendant who was the driver
of a car containing two passengers and several grams of cocaine, and we held that the
evidence was legally insufficient to support the defendant’s conviction for possession
of cocaine. 80 S.W.3d at 742. We noted that, “[i]n summary, [Roberson] was the
driver of a car containing two passengers; 24 grams of cocaine were later discovered
in and near the car; the drugs were found near where [Roberson’s] cousin, Lee, had
previously been seated; and the jury could have found that [Roberson] displayed a
general consciousness of guilt after his arrest when he disassociated himself from [the
second passenger].” Id. at 741. We explained that, although the facts that the
defendant “was the driver of a car later found to contain cocaine” and his relationship
to Lee and attempted disassociation from the second passenger were “suspicious,”
such “[p]roof amounting only to strong suspicion or mere probability will not
suffice.” Id. at 742. We emphasized,
There is nothing else to link [Roberson] to the cocaine. He was not
under the influence of drugs. In fact, no drugs of any kind, drug
paraphernalia, or money was found on his person or near the driver’s
seat. There was no drug odor in the car. Appellant was cooperative
throughout the stop and made no furtive gestures. The cocaine was not
found until almost twenty minutes had passed since appellant got out of
the car at [the Trooper’s] request, while Lee and [the second passenger]
remained inside during much of that time. No statements were made by
any of the three connecting [Roberson] to the drugs. 

Id. Accordingly, we concluded,
 
In short, the State has presented a collection of potential linking factors,
each of which might raise suspicion but is insufficient on its own to
provide the required . . . link between appellant and the cocaine. These
factors, even when viewed together in the light most favorable to the
verdict, do not create the logical force necessary to allow a rational juror
to find, beyond a reasonable doubt, that appellant had knowledge of the
presence of cocaine.

Id.
          In the instant case, the State asserts that the narcotics were “(1) conveniently
accessible to the appellant, (2) in a vehicle under the care, custody[,] and control of
the appellant, (3) found in the console next to appellant, and (4) found secreted in an
enclosed space.” Without citation to any supporting authority,


 the State thus
concludes that “the jury could [have] reasonably infer[red] that appellant exercised
control, management, or care over the substance and knew the matter possessed was
contraband.”
          The majority, likewise emphasizes,
[T]he State presented evidence that the narcotics, located in the center
console, were conveniently accessible to appellant and that appellant, as
the driver, owned or had the right to possess the car where the narcotics
were found. The State also presented evidence that, prior to Davis’s
exiting the car, the center console in which the narcotics were located
was not completely closed, which, coupled with the evidence of Hoang’s
suspicious behavior, gives rise to a reasonable inference that the sack
in which the narcotics were located had been visible before appellant
and Davis exited the Dodge. The fact that the narcotics were secured in
the console, therefore, constitutes evidence of an alternative link—that
the narcotics were secreted in an enclosed space. 

(Emphasis added). The majority adds,
 
[T]he State presented evidence that appellant and Davis together greeted
Hoang as he approached them in the parking lot, all three men got into
the car being driven by appellant, thus concealing their actions from
plain view, all three men remained in the car for 30 seconds, and Hoang
then exited the car empty-handed and without the sack, causing Chiue
to conclude he had observed a hand-to-hand drug transaction.

(Emphasis added). The majority concludes that “these facts, in combination, provide
sufficient logical force to establish appellant exercised control over the narcotics and
his contact was more than fortuitous.” (Emphasis added). This conclusion, like the
State’s conclusion, is based upon assumptions that merely raise suspicion.
          Here, the bottom line is that, as conceded by the State during oral argument,
there is absolutely no evidence in the record that appellant ever looked inside of the 
brown sandwich sack, ever touched the sack, or had anything to do with placing the
sack into the car’s console. Agent Chiue simply was not in a position to hear
anything or see what happened inside of the Dodge. Thus, Chiue could not testify
that Hoang gave the sack to appellant, nor did Chiue hear appellant say anything to
prove that appellant knew that the sack contained narcotics. 
          Yet, the State and the majority conclude that the facts of this case establish that
appellant knowingly exercised control over the narcotics in the brown sandwich sack. 
This conclusion stands in direct contradiction to Roberson, in which we held that
such “[p]roof amounting only to strong suspicion or mere probability will not
suffice.” 80 S.W.3d at 742. Even if Agent Chiue may have had reasonable suspicion
to temporarily detain appellant, Davis, and Hoang, this does not mean that the State’s
evidence is legally sufficient to prove that appellant knowingly exercised control over
the narcotics in the sack.
          When objectively considered, the State has presented only two factors that
could possibly link appellant to the narcotics: (1) appellant had possession of the car
in which the narcotics were found, and (2) appellant, as the driver of the car, was in
very close proximity to and had access to the console in which the brown sandwich
sack containing the narcotics was found. However, as we stated in Roberson, without
exclusive control of the car, the mere fact that “a defendant was driving a vehicle
containing narcotics,” by itself, is not legally sufficient to sustain a conviction for
possession of the narcotics. Id. at 736. Thus, without any other links to the narcotics,
the logical force of this link is undermined. 
          In regard to the fact that appellant, as the driver, was close to and had access
to the console in which the brown sandwich sack containing the narcotics was found,
the logical force of this link is undermined by the fact that the State did not prove
when the narcotics were placed in the console. One might suspect that appellant
placed the narcotics in the console. However, as Sergeant Landry testified, after
appellant “immediately” complied with the instructions of police officers to exit the
car, Davis was alone in the car with the narcotics. Here, the following exchange
between the State and Landry occurred:
[State]: The vehicle stops and what do you [do] next?
 
[Landry]: We asked the driver to get out of the vehicle
and then we asked the passenger to get out of
the vehicle.
 
[State]: Did they comply?
 
[Landry]: The passenger—the driver immediately got
out of the vehicle and was placed in the rear
of the patrol car. The passenger was asked to
get out of the car several times before he
would comply.

(Emphasis added). On cross-examination, Landry elaborated,
[Defense counsel]:And then when you asked [appellant] to get
out of the car . . . , he did that promptly and he
did it courteously?
 
[Landry]:Yes, sir.
 
[Defense counsel]:And you said he appeared to be relaxed?
 
[Landry]: Compared to [Davis], yes.
 
[Defense counsel]:He made no furtive movements that you saw?
 
[Landry]:That I saw, no, sir.
 
[Defense counsel]: He never attempted to put his hands or
anything in that console, right?
 
[Landry]:Not that I saw.
 
[Defense counsel]:You never saw him touching that brown paper
bag, correct?
 
[Landry]:No, sir.

          In stark contrast to appellant, the police officers had to ask a “very nervous”
Davis several times to exit the Dodge, and, before he finally did, Davis’s “elbow hit
the console,” and it “clicked as if it had not been shut completely.” This is an
undisputed fact that the jury was not entitled to ignore. Because Davis was alone in
the Dodge after appellant had gotten out of the Dodge and was then placed into the
patrol car, it cannot logically be inferred that the brown sandwich sack containing the
narcotics was in the console when appellant was in the Dodge. Moreover, the fact
that Davis made a furtive gesture, apparently to conceal the sack, by closing the
console, does not, as asserted by the majority, support a logical inference that “the
sack in which the narcotics were located had been visible before appellant and Davis
exited the Dodge.” More importantly, there is still no evidence in the record that
appellant knew what was inside the sack. There is also no evidence that would
support a logical inference that appellant “secreted” the narcotics “in an enclosed
space.” The only logical inference supported by the undisputed evidence is that
Davis, not appellant, concealed the brown sandwich sack in the console of the Dodge
after appellant had exited the Dodge and was placed in the patrol car.
          Nevertheless, the State contends that appellant’s connection with the narcotics
“was more than fortuitous.” In its brief, the State asserts that, 
Agent Chiue actually observed the drugs being delivered into the
passenger compartment of the vehicle occupied by the appellant along
with his friend and shortly thereafter, observed the Asian male involved
in that delivery counting a large wad of paper money in his car. The
paper bag was secreted in the console located next to the appellant who
was the driver. The jury could reasonably infer from these
circumstances that the appellant could not have escaped having
knowledge of the drug transaction that occurred within the small
enclosed confines of the passenger compartment and in his presence,
and that he clearly exercised care, custody, and control over the
contraband when he either secreted the drugs in the console or allowed
the drugs to be secreted. 
(Emphasis added). First, Agent Chiue did not testify that he “actually” saw Hoang
deliver narcotics into the passenger compartment of the Dodge. If he had, that would
establish Davis’s possession, not appellant’s. In fact, Chiue testified that he could not
see what had happened inside of the car. He did testify that he saw Hoang, carrying
a “wadded up” brown sandwich sack, enter the Dodge with appellant and Davis and
then saw Hoang exit the Dodge “empty handed” after approximately 30 seconds. 
          Second, Agent Chiue did not “observe” Hoang “counting a large wad of paper
money in his car.” On direct examination, Chiue did testify as follows:
[Chiue]:Another Asian male gets in the vehicle,
they’re parked right next to me, as I was
looking down on them, they were counting
money.
 
[The State]: Could you see denominations of the bills?
 
[Chiue]:It was paper money. They were counting it
just like you count paper money.
 
[The State]: How big of a wad of money are we talking
about?
 
[Chiue]:I couldn’t tell you; but they were—they were
just counting it like money.
(Emphasis added). On cross-examination, Chiue clarified his previous testimony,
[Defense counsel]: And then another Asian male came out of the
pool hall?
 
[Chiue]:Correct.
 
[Defense counsel]:Got into the Accord?
 
[Chiue]:Correct.
 
[Defense counsel]:And at that time you saw some money being
counted?
 
[Chiue]:Correct.
 
[Defense counsel]:Who was counting the money?
 
[Chiue]:The second male that came out of the pool
hall.
 
[Defense counsel]:All right. So you don’t know if the money
came from Mr. Hoang, the person that
approached the red [Dodge], or you don’t
know if the money came from the person in
the pool hall, right?
 
[Chiue]:I don’t know.
(Emphasis added). Thus, the State’s argument is based, in part, on false premises.
          Third, even assuming that Agent Chiue actually saw Hoang “counting a large
wad of money” in his car after handing off the brown paper sack in the Dodge, this
would, at best, support Chiue’s suspicion that Hoang had engaged in a narcotics
transaction. Given the presence of Davis in the Dodge, the State’s evidence does not
prove that Hoang actually sold the narcotics to appellant. Nor does it prove that
appellant exercised “actual care, custody, control, or management” over the narcotics. 
Nor does it prove that appellant even had any knowledge of what was inside the
brown sandwich sack. 
          Finally, as conceded by the State during oral argument, Agent Chiue did not
see what happened in the Dodge and Chiue did not hear any word spoken between
Hoang and appellant and Davis during their 30 seconds together. As further
conceded by the State, it presented no evidence that appellant ever touched the brown
sandwich sack, looked into the sack, or had anything to do with placing the sack into
the car’s console. 
          In support of its holding that the evidence in this case is legally sufficient to
show that appellant knowingly exercised care, custody, control, and management over
the narcotics in the brown sandwich sack, the majority relies, parenthetically, on
Evans, 202 S.W.3d at 166; Poindexter, 153 S.W.3d at 405; and Robinson v. State, 174
S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d). These cases are
not applicable here.
          The majority first cites Robinson for “affirming [the] possession conviction of
[a] front-seat passenger in [a] truck where [the] cocaine was located in [a] factory
compartment in [the] back wall of [the] truck, and noting that [the] cocaine was
within [the] vicinity and easily accessible to [the] passenger.” See 174 S.W.3d at 326. 
However, there was far more significant evidence linking Robinson to the
contraband. We emphasized,
In summary, [Robinson] was a passenger in a truck found to be
transporting two kilos of cocaine worth more than one million dollars. 
The cocaine was located in an enclosed, unlocked space in the back of
a truck, concealed under a shirt. [Robinson] was traveling from
Houston, a major cocaine distribution point, and claimed to have been
there two days—an amount of time that conflicted with [the driver’s]
account— but carried none of the necessities for an overnight stay, such
as a toothbrush or fresh clothing. Neither [Robinson] nor [the driver]
carried any identification; [the driver] was not a licensed driver, but
stated that [Robinson] was in fact a licensed driver and was supposed to
be driving. [The driver] gave conflicting accounts as to ownership of
the truck, and he and [Robinson] gave conflicting accounts regarding
their trip to Houston. Moreover, a magazine for a semi-automatic
handgun was found in plain view on the console between [the driver]
and [Robinson], and, when [the trooper] asked where the weapon was,
[Robinson] reached toward a loaded handgun concealed by a shirt on the
floor of the truck. The jury could have found that the handgun was for
the protection of the cocaine.

Id. at 329. The links established in Robinson and their logical force taken together
serve to show precisely how weak the State’s evidence is in the instant case, not that
appellant knowingly “exercised control over the narcotics and his contact was more
than fortuitous.”
          The majority next cites Poindexter for the proposition that “[t]he mere fact that
a person other than the accused might have joint possession of the premises does not
require the State to prove that the defendant had sole possession of the contraband.” 
See 153 S.W.3d at 412. This is true, but it certainly does not contradict appellant’s
point, which is that the State, in such a circumstance, must present sufficient evidence
to link such an accused to the contraband. In Poindexter, the State presented
evidence that after a confidential informant purchased cocaine from Poindexter at a
house, police officers executed a search warrant at the house to seize narcotics. Id.
at 404. Although another person had been seen in the house and Poindexter was not
present when the officers executed the warrant, the State presented unobjected to
hearsay evidence from one of the officers that the confidential informant had told the
officers that Poindexter possessed and sold cocaine and where Poindexter hid the
cocaine in his house. Id. at 407–11. Moreover, the cocaine was found in plain view
and “recovered from a hidden location accessible only to one who exercised control
over the house.” Id. at 409. Poindexter resided at the house, the cocaine was
accessible to Poindexter, and the officers found not only the cocaine, but
manufacturing and packaging materials, including glass tubes or vials used to make
crack cocaine, razors, baggies, and a scale. Id. at 411–12. The Texas Court of
Criminal Appeals concluded that the relative probative value of all of the evidence,
“including the hearsay evidence,” was legally sufficient to show that Poindexter
“exercised care, custody, control, and management over the contraband” and “knew”
it was contraband. Id. at 412. Here, of course, the State did not present evidence
from anyone to establish that appellant had such direct control over the brown
sandwich bag or that he even knew what was inside of it.
          Finally, the majority relies on and quotes Evans for the proposition that the
circumstantial evidence here, as in Evans, constitutes “amply sufficient evidence
connecting appellant to the actual care, custody, or control of narcotics.” See 202
S.W.3d at 166. However, the Texas Court of Criminal Appeals summarized the case
against Evans as follows: The State argues that the single most important link or connection
between [Evans] and . . . fourteen grams of cocaine rocks is the simple
fact that he was sitting directly in front of them. They were within arm’s
reach; the coffee table was less than a foot away. This evidence
constitutes two extremely strong “presence” and “proximity” links. 
[Evans] was not merely present in a house with drugs cached away
somewhere, they were right under his nose. The drugs were in plain
view—a third link. He was alone in the house—a fourth link. He
immediately admitted that he knew why the police had walked in the
door—“Drugs.” That is a fifth link. He received mail at 923
Lombrano, thus raising a reasonable inference that he lived there, which,
in turn, raises a reasonable inference that he had actual care, custody,
and control of items found in plain view on the coffee table. This is a
sixth link. He had $160 in twenties in his pocket, but he was apparently
unemployed. This is a seventh, albeit weak, link. The State argues that
the sum total of this circumstantial evidence is sufficient to support a
rational jury’s finding, beyond a reasonable doubt, that appellant
exercised actual care, custody, control, or management of the fourteen
grams of cocaine on the coffee table. We agree.

Evans, 202 S.W.3d at 163 (emphasis added). Clearly, the strength of the links in
Evans are in no way comparable to the purported links in the instant case. Evans does
not support the majority’s conclusion that the evidence here is legally sufficient to
support appellant’s conviction.
          In fact, each case relied upon by the majority to support its
conclusion—Robinson, Poindexter, and Evans—actually undermines its conclusion. 
 None of the strong and significant links present in those cases are present here. Here,
in contrast to Robinson, the State did not present evidence of facts inconsistent with
any statement of appellant. Appellant and Davis did not give conflicting stories to
Sergeant Landry about their travel plans or ownership of the car in question. Nor did
appellant have a firearm in the Dodge “for the protection” of narcotics. In contrast
to Poindexter, the State, here, did not present evidence from a confidential informant
that appellant hid narcotics in a specific location. Finally, in contrast to Evans, the
State presented no evidence that narcotics were found in plain view of appellant while
he was “sitting directly in front of them.” 
          As we noted in Roberson, “possession means more than being where the action
is.” 80 S.W.3d at 742. Moreover, “[p]roof amounting only to strong suspicion or
mere probability will not suffice.” Id. Here, appellant was the driver of a car found
to contain narcotics in the console of the car near the driver’s seat. However, because
appellant did not have exclusive control over the car, this fact merely raises suspicion. 
See id. As in Roberson, there is nothing else to link appellant to the narcotics. The
narcotics were not found in plain view where one would know of their presence. 
Appellant was not under the influence of narcotics. No narcotics of any kind, drug
paraphernalia, or money was found on his person. There was no drug odor in the car. 
Appellant was cooperative throughout the stop and made no furtive gestures. He did
not engage in conduct indicating a consciousness of guilt and did not attempt to
conceal or destroy evidence. Appellant did not attempt to flee or escape and made
no incriminating statements connecting himself to the narcotics. Moreover, appellant
was not present in the Dodge when the narcotics were found after Davis had hit the
console of the car with his elbow as if to close the console. 
          As in Roberson, the State has presented some “potential linking factors” which
“might raise suspicion” but do not have the logical force necessary to actually link
appellant to the narcotics. See id. Even when viewed together in the light most
favorable to the verdict, the factors relied upon by the State “do not create the logical
force necessary to allow a rational juror to find, beyond a reasonable doubt,” that
appellant exercised actual care, custody, control, or management over the narcotics
or even knew that the brown sandwich sack contained narcotics. See id.  
          Accordingly, I would hold that the evidence is legally insufficient to support
appellant’s conviction of the offense of possession of a controlled substance. I would
sustain appellant’s first issue and reverse the judgment of the trial court and render
a judgment of acquittal. 
 
 
 
 
 
 
          The majority’s conclusion to the contrary is in direct contradiction of the well-settled law and our holding in Roberson. Unwittingly, the majority’s opinion waters
down the links rule to the point that it is nearly meaningless and significantly erodes
the protection that the links rule affords bystanders “from conviction based solely
upon . . . fortuitous proximity to someone else’s [narcotics].” Poindexter, 153
S.W.3d at 406. 
                                                    
                                                                        
 
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Bland.
Justice Jennings, dissenting.
Publish. Tex. R. App. P. 47.2(b).