Opinion issued April 15, 2010











     




In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00861-CR




FRANK BULLARD, III, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the County Court at Law No. 1
Galveston County, Texas
Trial Court Cause No. 270028




MEMORANDUM OPINION

          A jury found appellant, Frank Bullard, III, guilty of possession of marihuana
weighing less than two ounces.


 The trial court assessed punishment at six months
in jail and a fine of $200 but suspended appellant’s sentence and fine for twelve
months. In his sole issue, appellant argues that the evidence was factually insufficient
to support the verdict of guilty.
          We affirm.
BACKGROUND
          At approximately 3:00 a.m. on the morning of April 19, 2007, Detective M.
Solenberger and Officer Morrison were dispatched to investigate a noise complaint
at an apartment complex at 712 Avenue H in Galveston, Texas. When they arrived,
they noticed a group of men loitering near a carport and appellant standing alone next
to the driver’s side door of a car that was playing loud music. While speaking with
appellant, Detective Solenberger smelled marihuana and concluded that appellant was
intoxicated. Detective Solenberger then noticed a bag of marihuana sitting on the
hood of the car next to which appellant was standing. Appellant admitted to owning
the vehicle. He reached into the car and turned down the music. The officers arrested
him for possession of marihuana.


 Shortly after appellant was arrested, his mother
and sister arrived on the scene.
          At trial, the State called Detective Solenberger as its sole witness. She testified
that on the date of appellant’s arrest she was a field training officer and was patrolling
the streets. On the night of April 19, 2007, she and Officer Morrison were on patrol
together. Due to a noise complaint, they were dispatched to 712 Avenue H. When
they arrived at that address, Detective Solenberger saw a group of men loitering in
the apartment’s carport area, and she saw appellant standing by a car, which was
playing loud music. Appellant was the only person near the car when she and Officer
Morrison arrived. Upon their arrival, appellant turned the music down. As Detective
Solenberger approached appellant, she noticed he had bloodshot, watery eyes, and she
smelled a mixed odor of cigars and marihuana emanating from him, but she did not
smell alcohol on his breath. She asked appellant whether he had been drinking, and
he said ‘no.’ In response to questions from Solenberger and Morrison, appellant
stated that he had just come from “BJ’s” and that he had been at a nightclub until
approximately 2:00 a.m. Detective Solenberger believed appellant was under the
influence of alcohol or drugs based on his speech, physical appearance, and
demeanor, but she did not perform any specific tests to determine whether his
intoxication was due to marihuana. 
          Detective Solenberger noticed a bag, a bottle, a cup, and a clear plastic baggie
containing a substance she recognized as marihuana on the hood of the car. She
asked appellant who owned the vehicle, and appellant said it was his. Detective
Solenberger noticed that near the driver’s side door there were “[t]wo empty boxes
of cigars or cigar boxes and numerous cigar butts” and there were “cigarette ashes on
the [car’s door] frame.” One of the cigar butts was immediately beneath the driver’s
side door. There was also loose tobacco among the cigar butts. Detective
Solenberger testified that a common method for smoking marihuana is to remove the
tobacco from the inside of a cigar and replace it with marihuana. However, she never
saw appellant holding marihuana or a cigar. She arrested appellant. Shortly
thereafter, appellant’s mother and sister arrived on the scene. Solenberger testified
that appellant protested his arrest by proclaiming his innocence and that his mother
and sister identified “Smokey”


 as the owner of the marihuana. 
          The defense called four witnesses: Elizabeth Payton, Willa Mae Payton, Bobbie
Jean Barnes, and appellant. Elizabeth Payton, appellant’s mother, testified that on the
night of appellant’s arrest she, appellant, appellant’s wife, Renisha Mason, and Willa
Mae Payton, appellant’s sister, were at BJ’s nightclub in Galveston, Texas. She and
Willa Mae drove separately from appellant, who drove with Mason. They all
remained at the club until it closed at 2:00 a.m., after which they all drove to Bobbie
Jean Barnes’s apartment. When they arrived at the apartment, Payton waited for
appellant to get inside, and then she and her daughter left to go to a Jack-in-the-Box
restaurant. She saw “Smokey” and others, who were smoking, drinking from cups,
and playing music. After going to the restaurant, the women stopped at a gas station,
where they called Barnes’s apartment and asked appellant if he would like them to
buy him some cigarettes. 
          Payton testified that she and Willa Mae returned to the apartment with soda and
cigarettes for appellant. When they arrived, the police officers were putting appellant
into their patrol car. She testified that appellant had left the apartment to check on his
car because “people break in and take your stuff over there.” She also testified that
she was only gone from the apartment for five minutes, but she conceded that she was
not there when the police arrived. She testified further that appellant has a speech
disorder and that when he is upset he resorts to “hollering and crying.” When she saw
appellant, he said, “Momma, I didn’t do nothing,” and his eyes were red from rubbing
them and crying. The day after appellant’s arrest, she confronted “Smokey,” who
admitted that the drugs belonged to him but indicated that he would not confess to the
police. 
          Appellant’s sister, Willa Mae Payton, testified that, at an earlier but unspecified
hour on the day of appellant’s arrest, she had been at a Mobil gas station near the
apartment complex and had seen “Smokey” purchasing cigars. She also testified that
there were thirteen or fourteen men “partying” in the parking lot when they arrived
at the apartment complex for the first time. She could smell marihuana even while
still inside her car. She could identify four of the men in the parking lot, including
“Smokey.” After appellant entered Barnes’s apartment, Willa Mae and her mother
went to a Jack-in-the-Box restaurant for food and soda and then to a gas station for
cigarettes. She called appellant and instructed him to come outside to get his
cigarettes and soda. She and her mother were absent for approximately ten minutes,
during which time the police officers arrived. When they returned to the apartment,
appellant was in the back of Detective Solenberger’s car, and he was “hollering,”
“They got me for nothing.”
          The defense then called Bobbie Jean Barnes, appellant’s sister-in-law. She
testified that appellant called her around 1:45 a.m. on the night of his arrest and asked
whether he and Mason could spend the night at her apartment. After appellant
arrived at her apartment, they called appellant’s mother and asked her to get them
some cigarettes, which she consented to do. Appellant’s mother indicated to them
that she would call them when she was on her way back to the apartment. After she
called to tell them she was on her way back with the cigarettes, Barnes and appellant
went downstairs. Barnes testified there were a lot of men downstairs; she could smell
marihuana; the police appeared; the other men fled; and the officers then grabbed
appellant and “threw” him into the police car. Barnes also testified that there were
cups and marihuana on appellant’s car but that these did not belong to him.
          Finally, appellant testified on his own behalf. He testified that he, his mother,
his sister, and his wife went to BJ’s club. When they returned from the club, there
were a lot of men standing in a circle smoking, and he could smell marihuana. He
was worried about his car because its stereo system was worth a thousand dollars, but
he parked his car anyway and went into the apartment. Barnes called his mother and
asked her to pick up cigarettes, and shortly thereafter he and Barnes went downstairs
to meet his mother and sister to get the soda and cigarettes. Almost as soon as he and
Barnes went downstairs, he could smell marihuana. The police then “threw” him
against a car. He testified that Detective Solenberger told him that because the other
men ran she was going to arrest him for the marihuana. He then started crying. He
did not see the marihuana until he was being handcuffed. He also testified that he had
never smoked marihuana.
ANALYSIS
          In his sole issue on appeal, appellant contends that the evidence was factually
insufficient to support the verdict of guilty.
 
A.      Standard of Review
          We review the factual sufficiency of the evidence by viewing all of the
evidence in a neutral light, and we will set the verdict aside only if the evidence is so
weak that the verdict is clearly wrong and manifestly unjust or the verdict is against
the great weight and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1,
10–11 (Tex. Crim. App. 2000). In conducting a factual sufficiency review, “an
appellant court cannot substitute its judgment for that of the factfinder . . . .” Clewis
v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). “An appellate court judge
cannot conclude that a conviction is ‘clearly wrong’ or ‘manifestly unjust’ simply
because, on the quantum of evidence admitted, he would have voted to acquit had he
been on the jury.” Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). 
Regarding the second basis for a finding of factual insufficiency, “an appellate court 
must first be able to say, with some objective basis in the record, that the great weight
and preponderance of the . . . evidence contradicts the jury’s verdict before [the court]
is justified in exercising its appellate fact jurisdiction to order a new trial.” Id.
(emphasis omitted). 
B.      Factual Sufficiency
          In his sole issue, appellant specifically argues that the evidence is factually
insufficient to show that he exercised actual care, control, or management over the 
marihuana.
          The State charged appellant with the knowing possession of marihuana. See
Tex. Health & Safety Code Ann. § 481.121 (Vernon 2003). To prove unlawful
possession of a controlled substance, the State must prove that the accused
(1) exercised care, custody, control, or management over the substance, (2) was
conscious of his connection with it, and (3) knew what it was. See id. § 481.002(38)
(Vernon 2003); Swarb v. State, 125 S.W.3d 672, 684 (Tex. App.—Houston [1st Dist.]
2003, pet. dism’d). When contraband is not found on the accused person or when
the accused is not in exclusive possession of the place where the contraband was
found, we cannot conclude that the accused had knowledge and control over the
contraband unless the State establishes a link between the accused and the
contraband, i.e., independent facts and circumstances that connect the accused to the
contraband so as to suggest that the accused had knowledge of the contraband and
exercised control over it. Rhyne v. State, 620 S.W.2d 599, 601 (Tex. Crim. App.
1981); Robinson v. State, 174 S.W.3d 320, 324–25 (Tex. App.—Houston [1st Dist.]
2005, pet. ref’d); Swarb, 125 S.W.3d at 684. The link may be established through
either direct or circumstantial evidence. See Brown v. State, 911 S.W.2d 744, 746–47
(Tex. Crim. App. 1995). The link terminology does not constitute a unique legal rule,
but is only a shorthand way of expressing what must be proven to establish that the
narcotics were possessed knowingly or intentionally. Id. at 747. 
          Texas courts have established several factors that may help to establish a link
between the accused and the contraband, including whether (1) the defendant was
present when the narcotics were found; (2) the contraband was in plain view; (3) the
defendant was in proximity to the narcotics and had access to them; (4) the defendant
was under the influence of narcotics when arrested; (5) the defendant possessed other
contraband; (6) the defendant made incriminating statements when arrested; (7) the
defendant attempted to flee; (8) the defendant made furtive gestures; (9) the odor of
the narcotic was present; (10) the defendant owned or had the right to possess the
place where the narcotics were found; (11) the narcotics were found in an enclosed
place; (12) the amount of narcotics found was significant; (13) the defendant
possessed a weapon; and (14) the defendant possessed a large amount of cash. 
Swarb, 125 S.W.3d at 684. Although the courts have identified multiple factors
relevant to establishing the necessary link between a defendant and contraband, the
number of factors supported by the evidence is not as important as the “logical force”
they collectively create to show that a crime has been committed. Roberson v. State,
80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). Evidence that
links the accused to the narcotics must establish a connection that was more than
fortuitous. Brown, 911 S.W.2d at 747. 
          Here, appellant’s interaction with the police began when Detective Solenberger
and Officer Morrison, responding to a noise complaint, arrived in the parking lot
where appellant had parked his car. When the officers arrived at the parking lot, they
saw appellant standing next to his car, which was playing loud music, and, as they
approached him, he reached into his car and turned the music down. After Detective
Solenberger had approached appellant, she smelled marihuana and cigar smoke on
him, noticed that he had blood-shot, glassy eyes, and concluded that he was
intoxicated. While speaking with appellant, she noticed a clear baggie of marihuana
on the hood of the car that appellant had admitted to owning. Appellant was the only
person standing near the car on which the marihuana was found. She also noticed
cigar butts and lose tobacco on the ground near the car, which she testified were
consistent with smoking marihuana by removing the contents of the cigar and
substituting marihuana. Appellant’s family testified that they could smell marihuana.
          Appellant argues that these links are insufficient to link him to the marihuana. 
He points out that his witnesses all testified that he had just come down the stairway
leading to Barnes’s apartment when the police arrived and that he was going to check
on his car as he waited to meet his sister and mother, who were bringing him
cigarettes and soda. He further states that the witnesses agreed the amount of
marihuana smoked in the area could not have been caused by one person. He argues
that there was evidence that a “smoking party” had been going on for some time
before he arrived at the apartment complex, and, therefore, the odor of marihuana
would be on appellant whether he smoked it or not. Thus, he contends that the State
did not prove that he exercised actual care, custody, control, or management over the
contraband. 
          As we have stated, the number of existing factors supported by the evidence
is not as important as the “logical force” they collectively create to prove that a crime
has been committed. See Roberson, 80 S.W.3d at 735. Furthermore, conflicts in
determinations of credibility are resolved by the fact finder. Clewis, 922 S.W.2d at
134 (stating that in conducting factual sufficiency review appellate courts “[do] not
review the factfinder’s weighing of the evidence”). We cannot say that this evidence
is so weak as to undermine confidence in the jury’s verdict. Watson, 204 S.W.3d at
417. Thus, after neutrally examining all of the evidence, we hold that the proof of
guilt was not so weak that the verdict is clearly wrong and manifestly unjust; nor is
the verdict against the great weight and preponderance of the evidence. See Johnson,
23 S.W.3d at 10–11.
          We overrule appellant’s issue.
 
 
CONCLUSION
          We affirm the judgment of the trial court.
 
 
 
 
                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Justices Keyes, Sharp, and Massengale.

Do not publish. Tex. R. App. P. 47.2(b).