Opinion issued June 10, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00077-CR

———————————

Dexter TERRANCE Byrd, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 180th District Court 

Harris County, Texas



Trial Court Case No. 1133766

 



 

MEMORANDUM OPINION

          A jury found appellant, Dexter
Terrance Byrd, guilty of possession of a controlled substance with the intent
to deliver.[1]  The trial court found appellant’s two
enhancement paragraphs true and assessed punishment at 35 years’
imprisonment.  In one point of error,
appellant contends that the evidence was legally and factually insufficient to
sustain the verdict.

          We
affirm.  

BACKGROUND

          On
September 18, 2007, a police informant, Michelle Johnson, contacted Officer A.
Vanderberry of the Houston Police Department. 
Johnson informed Officer Vanderberry that she was aware of an
opportunity to buy crack cocaine from a person named Byrd.  Officer Vanderberry and other police officers
drove to where Johnson was, and she called appellant using the speaker phone
feature on her cell phone, which allowed the police officers to listen to her
conversation with appellant.  Appellant
agreed to sell Johnson $100 worth of crack cocaine.  The police provided Johnson with specially
marked bills to purchase the drugs.  Appellant
had instructed Johnson to meet him at a gas station in the 8200 block of West
Bellfort, but he then called her and changed the location of the meeting to an
apartment complex at 8201 West Bellfort. 
Officer Vanderberry and two other undercover police units positioned themselves
to watch the transaction as it occurred.

          Between
3:30 and 4:00 p.m., Johnson went to the designated apartment complex,
approached the passenger’s side door of a gold Chevrolet Impala, leaned down to
speak with appellant, and purchased crack cocaine from him.  After appellant sold Johnson crack cocaine,
the Impala drove away.  Officer
Vanderberry followed the car until it was safely away from a school, and then
he allowed marked police units to stop it. 
Appellant was in the passenger’s seat and Cassandra Pittman was in the
driver’s seat.  The police searched
Pittman and found ecstasy, powdered cocaine, and marijuana on her.  On the floor of the car they discovered the
money they had given to Johnson to buy the drugs.  They also discovered 1.3 grams of crack
cocaine in appellant’s sock, 7.1 grams of crack cocaine in a compartment in the
passenger’s door, and an ounce of crack cocaine in “cookie form” in the glove
box.[2]  The glove box also contained a variety of
envelopes.  After the uniformed police
officers stopped the car, Officer Vanderberry returned to the apartment complex
and picked up Johnson, who turned over 1.7 grams of crack cocaine to him.

          The
State obtained an indictment against appellant for possessing crack cocaine
with the intent to distribute it.  In the
indictment, the State alleged that appellant had two prior felony convictions.    

At trial, the State called four
witnesses, and appellant testified in his own defense.  As its first witness, the State called
Officer Vanderberry.  Officer Vanderberry
testified that Johnson called him on September 18, 2007 to inform him that she
could purchase crack cocaine.  He
testified that before he sent Johnson to purchase drugs from appellant, he
searched her to make sure that she did not have any drugs, personal money, or
weapons on her and that, after searching her, he gave her specially marked money
to use to purchase the drugs.  As Johnson
was buying the crack cocaine from appellant, a nearby school released its
students, and they began walking past the drug sale.  Officer Vanderberry decided to allow
appellant to drive away so that the arrest would not endanger the school
children.

          After
appellant drove for approximately one mile, marked police cruisers stopped
him.  The police arrested appellant and
Pittman, found the “buy money” on the floor of the car, and discovered crack
cocaine in appellant’s sock, in the car’s glove compartment, and in a
compartment on the passenger’s side door. 
       On cross-examination,
Officer Vanderberry testified that the police did not use video or audio
recorders and that he was at least a hundred yards away from the
transaction.  He testified, however, that
he observed it through binoculars.  He
also testified on cross-examination that he offered appellant a chance to help
the police, but appellant said he was a “habitual and [that] there was nothing
he could do to help himself.”

          The
State then called Johnson.  She testified
that she had been incarcerated for eight years for possessing a controlled
substance.  Shortly after her release she
became a confidential police informant. 
She testified that she contacts Officer Vanderberry almost every day
with information regarding drug sales. 
She obtained appellant’s name and telephone number “from a passerby,”
and, on September 18, she called Officer Vanderberry to tell him that she could
purchase drugs.  After receiving her
call, Officer Vanderberry set up the operation, drove to the area of town where
Johnson lived, and picked her up.  From
his undercover vehicle, Johnson called appellant on speaker phone and told him
she wanted $100 worth of crack.  She and
Officer Vanderberry drove to the location where appellant indicated he would be.  Johnson walked to the passenger’s side of a gold
Impala, spoke with appellant, gave him the marked money, and received crack
cocaine from him. The driver of the gold Impala then backed the car out and
drove away.  The officers followed
appellant, and then, after marked police cruisers pulled the gold Impala over,
Officer Vanderberry returned for Johnson. 
She gave him the crack cocaine. 
Officer Vanderberry searched her, and she informed him that appellant
had more crack cocaine in his possession.

          The
State then called Officer S. Bryant of the Houston Police Department’s
narcotics division.  He testified that he
was in an unmarked pickup truck and that he was parked only a few parking
spaces away from appellant’s car.  He
could not see appellant’s face, but he was able to see that a male and a female
were in the gold Impala.  He saw the
people in the front of the car “digging in, like, their pockets, you know, just
movement around the front compartment of the vehicle.”  He “observed a hand-to-hand transaction”
involving “the sale of illegal narcotics for money.”  After the transaction occurred, the gold
Impala drove away.  Officer Bryant “immediately
backed up and followed the vehicle,” keeping the Impala in his sight until the
marked patrol units pulled it over.  He
identified appellant as the person on the passenger’s side of the vehicle.    

          The
State then called Mona Medalla of the Houston Police Department’s crime
laboratory.  She testified that she weighed
and tested the substances that the police recovered from the gold Impala.  The substance appellant sold to Johnson
contained cocaine and weighed 1.6 grams. 
The substance found in the passenger’s side door was crack cocaine that
weighed 5.8 grams; the glove box contained cocaine and weighed 24.0 grams; and the
substance recovered from appellant’s sock contained cocaine and weighed 0.3
grams.

          The
State rested and the defense called appellant. 
Appellant admitted to prior convictions for possessing and selling
drugs.  He testified that, although he
was addicted to cocaine, he did not consider himself to be a drug dealer.  He admitted, however, that if he had drugs
and his friends did not he would sell them small amounts.  He testified that Pittman sold drugs and that
he often purchased them from her.  He would
sometimes do small favors for Pittman, and she would pay him in drugs.  On September 18, 2007, he received a call from
Johnson, who indicated that she wanted to purchase drugs from Pittman.  Appellant testified that Johnson called him because
she knew that he was with Pittman.  On
that day, Pittman had given him $50 and crack cocaine to ride with her to
provide protection as she sold drugs.  They
drove to the designated apartment complex, and Johnson approached his window.   After he made a few jokes with her, the transaction
took place.  Appellant could not remember
whether Johnson reached into the car to grab the crack rocks from Pittman or
whether Pittman reached across him and handed the rocks to Johnson.  After completing the transaction they left
the parking lot, drove off, and were stopped by the police and arrested.

          The
jury found appellant guilty, and the trial court assessed punishment at 35 years’
imprisonment.

LEGAL AND FACTUAL SUFFICIENCY

In his sole issue, appellant argues
that the evidence is legally and factually insufficient to establish that he possessed
more than 4 grams but less than 200 grams of cocaine with the intent to
distribute it because the only evidence that tied him to the offense was the
informant’s testimony.   He contends that
there is insufficient non-accomplice testimony to corroborate the informant’s
testimony and that his mere presence at the scene of the crime is not evidence
of his guilt.

A.              
Standard of Review

In assessing legal sufficiency,
this Court must consider the entire trial record to determine whether, viewing
the evidence in the light most favorable to the verdict, a rational jury could
have found beyond a reasonable doubt that the accused committed all essential
elements of the offense.  Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789 (1979); Burden v.
State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  We must “evaluate all of the evidence in the
record, both direct and circumstantial, whether admissible or inadmissible.”  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  In conducting a legal-sufficiency review, we
do not reevaluate the weight and credibility of the evidence, but ensure only
that the jury reached a rational decision. Muniz
v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). It is the function of
the trier of fact to resolve any conflict of fact, to weigh any evidence, and
to evaluate the credibility of any witnesses. See Dewberry, 4 S.W.3d at 740; Adelman
v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).  We therefore resolve any inconsistencies in
the evidence in favor of the verdict, and “defer to the jury’s credibility and
weight determinations.” See Marshall v.
State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Matson, 819 S.W.2d at 843.  

When conducting a
factual-sufficiency review, we view all of the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex.
Crim. App. 1997).  We will set the
verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  Under the first prong of Johnson, we cannot conclude that a conviction is “clearly wrong” or
“manifestly unjust” simply because, on the quantum of evidence admitted, we
would have voted to acquit had we been on the jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury’s resolution of
that conflict. Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of
the evidence contradicts the jury’s verdict.  Id.  In conducting a factual-sufficiency review, we
must also discuss the evidence that, according to the appellant, most
undermines the jury’s verdict.  See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

We may not substitute our judgment
for that of the fact-finder. King v.
State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000). The fact-finder alone
determines what weight to place on contradictory testimonial evidence because
that determination depends on the fact-finder’s evaluation of credibility and
demeanor. Cain, 958 S.W.2d at 408–09.  As
the judge of the credibility of the witnesses, the fact-finder may choose to
believe all, some, or none of the testimony presented.  Id.
at 407 n.5. The standard for reviewing the factual sufficiency of the evidence
is whether, after considering all of the evidence in a neutral light, the jury
was rationally justified in finding guilt beyond reasonable doubt. Watson, 204 S.W.3d at 415.

B.
     Analysis

A person commits the offense of
possession of cocaine with intent to distribute it if he “knowingly
manufactures, delivers, or possesses [cocaine] with intent to deliver.”  Tex. Health & Safety Code Ann. § 481.112(a) (Vernon 2003).  “An offense under Subsection (a) is a felony
of the first degree if the amount of [cocaine] is, by aggregate weight . . .
four grams or more but less than 200 grams.” 
Id. § 481.112(d).

1.    
Possession

To prove unlawful possession of a
controlled substance, the State must prove that the accused (1) exercised care,
custody, control, or management over the contraband, (2) was conscious of his
connection with it, and (3) knew what it was. See id. §§ 481.002(38), 481.112(a) (Vernon 2003); Swarb v. State, 125 S.W.3d 672, 684
(Tex. App.—Houston [1st Dist.] 2003,
pet. dism’d).  When contraband is not
found on the accused or when the accused is not in exclusive possession of the
place where the contraband is found, we cannot conclude that the accused had
knowledge of and control over the contraband unless the State establishes a
link between the accused and the contraband—i.e., independent facts and circumstances that link the accused to the
contraband so as to suggest that the accused had knowledge of the contraband
and exercised control over it.  Rhyne v. State, 620 S.W.2d 599, 601
(Tex. Crim. App. 1981); Robinson v. State,
174 S.W.3d 320, 325 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d); Swarb, 125 S.W.3d at 684. The link may
be established through either direct or circumstantial evidence.  Brown v.
State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

The link terminology does not
constitute a unique legal rule, but is only a shorthand way of expressing what
must be proven to establish that drugs were possessed knowingly or
intentionally.  Id.  Texas courts have
identified several factors that may help to establish a link between the
accused and the contraband, including whether (1) the defendant was present
when the drugs were found; (2) the contraband was in plain view; (3) the
defendant was in proximity to the drugs and had access to them; (4) the
defendant was under the influence of drugs when arrested; (5) the defendant
possessed other contraband; (6) the defendant made incriminating statements
when arrested; (7) the defendant attempted to flee; (8) the defendant made
furtive gestures; (9) the odor of drugs was present; (10) the defendant owned
or had the right to possess the place where the drugs were found; (11) the
drugs were found in an enclosed place; (12) the amount of drugs found was
significant; (13) the defendant possessed a weapon; and (14) the defendant
possessed a large amount of cash.  Swarb, 125 S.W.3d at 684.  Although several factors relevant to
establishing the necessary link have been identified, the number of factors
supported by the evidence is not as important as the “logical force” they
collectively create to prove that a crime has been committed.  Roberson
v. State, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d)
(quoting Whitworth v. State, 808
S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref’d)). Evidence that links the
accused to the drugs must establish a connection that was more than fortuitous.
Brown, 911 S.W.2d at 747.

Appellant contends that, without
Johnson’s accomplice testimony, the State’s remaining evidence was insufficient
to prove his guilt.  An
accomplice is a person who, with the defendant, affirmatively engages before,
after, or during the commission of an offense with the requisite state of
mind.  Druery v. State, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).  Here, Johnson is not an accomplice because
she lacked the intent to commit the offense. 
Moreover, even without her testimony, the evidence is sufficient to
establish appellant’s guilt beyond a reasonable doubt.

Officer Vanderberry testified that Johnson
informed the police that appellant had agreed to sell drugs to her, and a sting
was set up.  After arriving at the
designated apartment complex with Johnson, appellant was observed by the
officers selling Johnson crack cocaine from the passenger’s side window of a
gold Impala.   Appellant admitted that on
the day of his arrest he was riding with Pittman, who drove the car but did not
testify; and when the police stopped the Impala he was in the passenger’s seat.  Thus, appellant was present when the drugs
were recovered.  When the police officers
searched the car, the crack cocaine was in an enclosed space.  They discovered 5.8 grams of crack cocaine in
the Impala’s glove compartment, 24 grams of crack cocaine in a compartment on
the passenger’s side door, and 0.3 grams of crack cocaine in a bag in appellant’s
sock.  The combined weight made this a
significant amount of drugs.  Because
appellant was seated in the passenger’s seat, the drugs were in his proximity
and he had access to them.  Although the
police also discovered drugs on Pittman, they did not find crack cocaine on her,
and all of the crack cocaine was located on appellant’s side of the car.  Additionally, the police discovered the “buy
money” in the car.  After appellant was
arrested, he incriminated himself by telling officer Vanderberry that he was a “habitual”
and that cooperating with the police by providing them with information would not
help him.  The “logical force” of these
factors provides a link to appellant that is more than fortuitous.  Robertson,
80 S.W.3d at 735.  There was no
countervailing evidence.  Therefore, we
conclude that the evidence is legally and factually sufficient to show that
appellant possessed more than four grams of crack cocaine.

 

2.    
Intent to Deliver

To prove the offense of possession
of a controlled substance with the intent to deliver, the State must prove, in
addition to possession, that the accused intended to “transfer, actually or
constructively, to another a controlled substance . . . .” Tex. Health & Safety Code Ann. §
481.002(8) (Vernon 2003).  Intent to
deliver a controlled substance can be proved by circumstantial evidence,
including evidence regarding an accused’s possession of the contraband. Utomi, 243 S.W.3d at 82.  Additional factors that courts have
considered in determining whether the accused had the intent to deliver include
(1) the nature of the location at which the accused was arrested; (2) the
quantity of contraband in the accused’s possession; (3) the manner of
packaging; (4) the presence, or lack thereof, of drug paraphernalia for either
use or sale; (5) the accused’s possession of large amounts of cash; and (6) the
accused’s status as a drug user.  Id.

Here two police officers testified
that they heard appellant agree to sell Johnson $100 worth of crack cocaine and
that appellant called Johnson back and told her to meet him at a specific
apartment complex.  When Johnson arrived
at the designated apartment complex, they saw her purchase drugs from a person
sitting on the passenger’s side of a gold Impala.  After stopping the Impala, the police
discovered appellant in the passenger’s seat. 
Two police officers also testified that they found crack cocaine on
appellant, and appellant testified that he had a bag containing crack cocaine
in his sock when he was arrested.  The
police officers testified further that they recovered the “buy money” from the
gold Impala.  Appellant admitted that he had
sold drugs before and that he had been arrested for selling drugs in the 1990s.


When we view the evidence in the
light most favorable to the verdict, we cannot say that a rational jury could not
have found beyond a reasonable doubt that the accused committed all essential
elements of the offense.  Therefore, we conclude
that the evidence was legally sufficient. 
See Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Burden, 55 S.W.3d at
612.  

Giving due deference to the jury’s
weighing of the evidence, a neutral examination of the evidence shows that the
evidence is not so weak that the jury’s finding appellant guilty of possession
of cocaine with an intent to distribute is clearly wrong or manifestly unjust,
and that the determination of guilt is not against the great weight and
preponderance of the evidence. See Watson,
204 S.W.3d at 417. We hold the evidence is factually sufficient to prove
appellant’s guilt. 

We hold that the evidence is
legally and factually sufficient to show that appellant intended to distribute
more than four grams of crack cocaine.

We overrule appellant’s sole issue.

 

CONCLUSION

We affirm the trial court’s ruling.

                                                                   

 

 

 

Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Hanks, and Higley.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]
              See Tex. Health & Safety Code
Ann. § 481.112(a), (d) (Vernon 2003) (providing elements for
offense of possession of substance listed in Penalty Group 1 with intent to
distribute when amount is four grams or greater but less than 200 grams); see also Tex. Health & Safety Code Ann. § 481.102(3)(d) (Vernon 2003) (listing cocaine as
substance in Penalty Group 1).





[2]
              “Cookie
form” is a form of crack cocaine before it is broken down into smaller units
for individual sale.