

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00058-CR

_____

OSCAR VEGA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th Judicial District Court
Smith County, Texas
Trial Court No. 114-1035-09

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

According to Oscar Vega, notwithstanding the circumstances surrounding his drug-related arrest by Tyler[1] police officers, the State did not sufficiently prove that he had any connection with 30.61 grams of crack cocaine found in a Wendy's soft drink near Vega. He argues that, therefore, the evidence is legally and factually insufficient that he was guilty of possession of a controlled substance with intent to deliver.[2] We disagree and affirm the judgment of the trial court.

At the time of his arrest, Vega had been riding in a Ford Explorer driven by Jose Refugio Vasquez and also occupied by Geronimo Cruz. Earlier that night, Vasquez and Cruz had been riding around, smoking marihuana. At some point, the duo decided to get some food at the local Wendy's drive-thru and to kill two birds with one stone by engaging in a drug transaction there. They picked up their friend Vega along the way.

Meanwhile, Destry Wayne Walsworth, a sergeant with the Tyler Police Department, was conducting undercover surveillance on Carlos Enrique Garcia, who was suspected of selling "powder cocaine and crack cocaine." In his unmarked vehicle, Walsworth followed Garcia's tan Chevrolet Malibu into the Wendy's parking lot. Due to the late night hour, the Wendy's inside dining area was closed, but the drive-thru was open. Garcia parked in the northwest corner of the

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]Following a bench trial, Vega was found guilty and was sentenced to eight years' confinement.

2

parking lot—a maneuver Walsworth found suspicious. Walsworth pulled into the drive-thru line behind Vasquez's Explorer to avoid catching Garcia's attention. From that position, Walsworth witnessed what his experience suggested was a drug drop-off.

The drop-off and the stop happened this way. Cruz exited the Explorer and got in the passenger seat of Garcia's Malibu. The dome light was turned on and the parties appeared to be looking at something. A minute or two later, Cruz left the vehicle and got back into the front passenger seat of the Explorer. As Garcia left the parking lot, Walsworth radioed to a waiting surveillance crew and directed them to pull the Malibu over as he continued to observe the Explorer. Vasquez, Cruz, and Vega got their Wendy's order from the drive-thru and drove out of the parking lot. Walsworth then noticed Cruz not wearing his seat belt. Walsworth radioed to Officer Michael Kieny, who was driving a marked unit, and asked him to pull the Explorer over for Cruz's seat belt violation. Kieny signaled to the driver of the Explorer that it be pulled over, and Vasquez did so after travelling two to four blocks at a slow speed.

In addition to Cruz's traffic violation, Vasquez did not have his driver's license and could not locate proof of insurance. There was a "strong odor of burnt marijuana" coming from the vehicle. Vasquez was nervous and shaking. Officers asked the three occupants to exit the vehicle. Vega, who was sitting in the back seat on the passenger side, complied with the request.

Kieny testified, "When I asked Mr. Vega to open the door, I noticed there was ice and [his] pants were wet in the front. . . . He said when they were being pulled over that he spilled his drink

3

in his lap." When asked to identify himself, Vega initially gave Kieny a false name and birth date. A search of Vega produced 3.08 grams of marihuana, another bag of .3 grams of marihuana, and two Clonazepam pills. A search of Vasquez and Cruz produced no drugs, although Vasquez admitted to smoking marihuana earlier.

During a search of the Explorer, officers found a Wendy's bag on the passenger floorboard with 8.75 grams of marihuana. Located beneath the center console were 105.55 grams of marihuana, 1.98 grams of cocaine, and another .49 gram bag of cocaine. Officers observed that there were three Wendy's cups with lids and straws, two in the front center console, and one "on the—back of the center console." The "drink on the driver's side front" contained not only cola and ice, but also hid 30.61 grams of crack cocaine—the drugs leading to the State's indictment in this case. This drink was only partially full, while the other two drinks were fairly full.

Vega focuses on the location of the 30.61 grams of cocaine and argues that the evidence is legally and factually insufficient to prove that particular drug was possessed by Vega, as opposed to Vasquez or Cruz.

The legal and factual sufficiency of the evidence supporting a conviction is reviewed under well-established standards. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We must give deference to "the trier of fact to fairly resolve

conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). We may find evidence factually sufficient in two ways: (1) the evidence supporting the conviction is "too weak" to support the fact-finder's verdict, or (2) considering conflicting evidence, the fact-finder's verdict is against the great weight and preponderance of the evidence. *Laster*, 275 S.W.3d at 518. In so doing, we may find the evidence insufficient only when necessary to prevent manifest injustice. *Id*. Although we give less deference to the judgment in a factual sufficiency review, we will not override it simply because we disagree with it. *Id*.

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). Vega was in possession of cocaine with intent to deliver as charged in the indictment if he: (1) knowingly

(2) possessed, (3) with intent to deliver, (4) four grams or more but less than 200 grams (5) of cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (Vernon 2010). Vega contests only the elements of knowing[3] possession. With the elements of the hypothetically correct jury charge in mind, we consider the evidence.

The State was required to prove that Vega exercised control, custody, management, or care over the cocaine and that he knew the matter possessed was contraband. TEX. PENAL CODE ANN. § 1.07(a)(39) (Vernon Supp. 2009); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. 2006). By itself, mere presence at a location where drugs are found is not enough evidence to exhaust the State's burden. *Evans*, 202 S.W.3d at 162. However, presence or proximity, when combined with other direct or circumstantial evidence, may be sufficient to establish, beyond a reasonable doubt, an actor's control, management, custody, or care if the proof amounts to more than a strong suspicion or probability. *Id*. at 161; *Lassaint v. State*, 79 S.W.3d 736, 741 (Tex. App.—Corpus Christi 2002, no pet.).

Since Vega was not in exclusive possession of the cocaine or the vehicle in which it was found, additional independent facts and circumstances must link him to the contraband "in such a way that it can be concluded that the accused had knowledge of the contraband and exercised control over it." *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). In other words, the State must establish that Vega's connection with the narcotics was

---

[3]Vega's brief alleges that he did not know of the drugs located in the console. Our analysis focuses solely on the cocaine found in the Wendy's cup because it was an insufficient quantity to implicate the statute under which Vega was convicted. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d).

more than just fortuitous.  *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005). To conduct this analysis, we use the links test adopted by Texas courts to protect the innocent bystander from being convicted merely because of his or her unfortunate proximity to someone else's drugs.  *Evans*, 202 S.W.3d at 161–62.

These links include (1) Vega's presence when a search is conducted, (2) whether the contraband was in plain view, (3) Vega's proximity to and the accessibility of the narcotics, (4) whether he was under the influence of narcotics when arrested, (5) whether he possessed other contraband or narcotics when arrested, (6) whether he made incriminating statements when arrested, (7) whether he attempted to flee, (8) whether he made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether Vega owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether Vega was found with a large amount of cash, (14) whether his conduct indicated a consciousness of guilt, (15) whether he made incriminating statements connecting himself to the contraband, (16) the quantity of the contraband, and (17) whether Vega was observed in a suspicious area under suspicious circumstances.  *Id*. at 162 n.12; *Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.). This nonexhaustive list is not a litmus test, and it is the logical force of all of the evidence that

7

guides our determination.  *Olivarez*, 171 S.W.3d at 291.  In other words, the number of links present is not as important as the degree to which they tend to link the defendant to the controlled substance.  *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.); *Williams v. State*, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref'd); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

Factors tending to support the judgment include factors 1, 3, 5, 6, 9, 10, 12, 14, 16, and 17. Vega was present when the search was conducted, and Walsworth testified Vega was in a position to place the cup in the front center console from the back seat.  Vega possessed marihuana and Clonazepam when arrested, and initially gave incorrect identification.  Officers smelled the odor of burnt marihuana; other contraband was present; the Explorer was an enclosed area; giving a false identification indicated consciousness of guilt; the cocaine in the Wendy's cup was worth "easy 500-plus" dollars, an amount consistent with dealing drugs; and Vega was observed under the suspicious circumstances of a late night drug drop-off.

Factors 2, 4, 7, 8, 11, 13, and 15 support Vega's stance.  There was no contraband in plain view and no evidence that Vega was under the influence of any substance when arrested. Although testimony suggested the Explorer slowly travelled two to four blocks before pulling over after being signaled, Kieny said there was no acceleration in an effort to get away, and Vega was not driving the vehicle.  Kieny testified Vega did nothing out of order, indicating no furtive gestures were made.  Vega did not own the Explorer, possessed no cash during his arrest, and

8

made no statement connecting himself to the large amount of cocaine. Vega also relies on testimony from Vasquez that Cruz owned the drugs made the subject of the charge and that Vega possessed only the drugs that were on his person. Vasquez was arrested with $485.00 in his pocket, Cruz with $1,358.00. Vasquez claimed that Vega "didn't really have nothing to do with it."

We find that the evidence, when reviewed in a light most favorable to the judgment, is legally sufficient. It presents a fact question for the trier of fact to resolve. As fact-finder, the trial court was free to disbelieve Vasquez's testimony as an effort to protect Vega. This is exemplified by Vasquez's claim of ownership of the crack cocaine contrasted with his claim that he did not see Cruz put it in the cup. Although some factors favored Vega when conducting the links test, Vega was the only one with ice and cola on his pants when arrested. He made the statement to Kieny that he had spilled his drink in his lap. Considering that the two Wendy's cups closest to Vega and Cruz were "[f]airly full" and that all the cups had lids and straws, a deduction that Vega was the person who put the cocaine in the cup closest to Vasquez—spilling some of the ice and drink in a rush to hide the cocaine from the pursuing police car—was a reasonable deduction for the trial court to make.

We find that the evidence was factually sufficient for the court to find Vega was in knowing possession of the 30.61 grams of cocaine.

9

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    September 13, 2010
Date Decided:      September 14, 2010

Do Not Publish

10