**Stanley Bruce ROBERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–00–01420–CR.

Court of Appeals of Texas, Houston (1st Dist.).

July 11, 2002.

Rehearing Overruled Aug. 9, 2002.

James F. Keegan, Houston, for Appellant.

Michael R. Little, Dist. Atty., Anahuac, for State.

Panel consists of Chief Justice SCHNEIDER and Justices RADACK and DUGGAN.*

## OPINION

MICHAEL H. SCHNEIDER, Chief Justice.

A jury convicted appellant, Stanley Bruce Roberson, of possession of cocaine weighing 4 grams or more but less than 200 grams. The jury then found an enhancement paragraph alleging prior felony theft convictions to be true and assessed punishment at 33 years in prison. In the first of his three points of error, appellant challenges the legal sufficiency of the evidence presented during the guilt/innocence phase of trial. We reverse and acquit.

### Background and Procedural History

On the night of January 4, 2000, Trooper Jason Taylor of the Texas Department of Public Safety was on routine patrol traveling eastbound on Interstate 10 in Chambers County. Near the Trinity River Bridge, he noticed an older model Lincoln with expired registration and inspection stickers and pulled it over at approximately 8:20 p.m. Because the stop was captured on videotape by the patrol car's onboard camera, what occurred during the next thirty minutes before appellant was arrested is not in doubt, but the legal implications of appellant's actions and the evidence found at the scene is highly disputed.

Appellant was driving the car, his cousin, Diamond Lee, was in the front passenger seat, and Coy Nixon was in the backseat. The trooper approached on the passenger side and asked appellant to get out of the car. Appellant quickly complied. He and the trooper stood between the patrol car and the Lincoln and spoke. During the initial questioning, appellant presented his valid driver's license to the trooper, explained that he had borrowed the car from a person with the last name "Wilson," and, when asked, told the trooper there was no insurance information in the car.

Trooper Taylor then asked appellant to stand at the front of the patrol car, several yards from the Lincoln, while Taylor questioned the passengers. Appellant moved to the front of the patrol car and remained there for the duration of the stop. Trooper Taylor testified that, throughout the stop, appellant was composed, gave no resistance, did not appear to be intoxicated or under the influence of drugs, and had a pleasant personality.

The trooper had Lee get out on the passenger side of the two-door car and questioned him about the purpose of the trip. Lee was allowed to return to the car because he seemed unsteady and Trooper Taylor suspected he was under the influence of something. The passenger side door remained open throughout the rest of the stop. The trooper then asked Nixon, the backseat passenger, to get out on the driver's side of the car. After getting out and shutting the door behind him, Nixon was questioned and consented to a pat-down search that turned up nothing. At this point, having briefly checked the car and the surrounding area with his flashlight, the trooper did not observe any narcotics. He returned to appellant and told him that he would check his license and just write him a ticket for the inspection violation if everything came back clear. Trooper Taylor then returned to the Lin-

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

coln and told Nixon that he could sit back down in the car. Nixon returned to the backseat through the passenger side door. The trooper walked back to appellant and began writing out a citation.

A few minutes later, before he had issued a citation, the trooper asked appellant's permission to search the car. Appellant agreed, and then was asked to consent to a pat-down search and a search of his pockets. Appellant again agreed, and the trooper found nothing illegal during these searches of appellant's person. The trooper then had Lee get out of the car. He briefly questioned Lee and told him to stand away from the car. He then had Nixon step out of the car and performed a search of his person. He found two bottles on Nixon that he suspected contained PCP.

Some time after finding the bottles on Nixon, the trooper saw a half "cookie"[1] of crack cocaine on the roadway a few inches from the car on the passenger side. He subsequently saw a full "cookie" of crack cocaine on the passenger side floorboard near the door. The combined weight of the cocaine was nearly 24 grams.

Nixon, Lee, and appellant were placed under arrest. After being advised of his rights, appellant denied any knowledge of the drugs. The three were then taken to a highway patrol office, where they were searched. The troopers recovered a small plastic bag from Lee's underpants that contained a white residue that tested positive for cocaine. They also recovered $700 from Lee. Nixon had $83 dollars and five rocks of crack cocaine in his possession. No drugs or money were recovered from appellant, and a police check on the Lincoln confirmed that he was not the owner of the car.

Appellant and Lee were tried together. Both were charged with possession of cocaine with intent to deliver. Neither defendant presented any evidence after the State rested. The jury charge authorized conviction if appellant was the principal actor or a party to an offense. Lee was convicted of the charged crime, while appellant was found guilty of the lesser included offense of possession of cocaine.

## Applicable Law

In his first issue, appellant argues that the evidence was legally insufficient to support his conviction for cocaine possession. Appellant also challenges the factual sufficiency of the evidence in his second issue for review. When both the legal and factual sufficiency of the evidence are challenged, we must first review the evidence under the legal sufficiency standard. *Harmond v. State*, 960 S.W.2d 404, 406 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (en banc opinion); *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim. App.1996). In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Although our analysis considers all evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the jury. *Id.*

A person may not be convicted of possession of a controlled substance, as a principal actor, unless (1) he exercised actual care, control, or custody of it, and (2) he was conscious of his connection with it

---

1. A "cookie" is, as the term implies, a circular piece of crack cocaine that is generally broken down into smaller units for retail sale.

and knew what it was. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995); *see* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(a) (Vernon Supp. 2002). One need not have exclusive possession of the drug. *Harvey v. State*, 487 S.W.2d 75, 77 (Tex.Crim.App.1972).

▆▆▆ To prove that a defendant is criminally responsible for possession of a controlled substance as a party, the evidence must first show that another person possessed the contraband. *Woods v. State*, 998 S.W.2d 633, 636 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). Then the State must show that, with the intent to promote or assist the commission of the offense, appellant solicited, encouraged, directed, aided, or attempted to aid the other's possession. TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 1994); *Woods*, 998 S.W.2d at 636. The mere presence at a place where contraband is being used or possessed by others does not justify finding that a person is in joint possession or is a party to an offense. *Martin v. State*, 753 S.W.2d 384, 386 (Tex.Crim.App.1988); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex.App.-Austin 1991, pet. ref'd).

*Affirmative Link*

▆▆▆ When, as here, the accused is not in exclusive possession of the place where contraband is found, there must be additional independent facts and circumstances which affirmatively link the person to the contraband in such a way that it can be concluded that the accused had knowledge of the contraband and exercised control over it. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App.1981); *Dickerson v. State*, 866 S.W.2d 696, 700 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd); *Whitworth*, 808 S.W.2d at 569. An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *Johnson v. State*, 658 S.W.2d 623, 627 (Tex. Crim.App.1983); *Dickerson*, 866 S.W.2d at 700. Proof of an affirmative link between the accused and the contraband is mainly needed to establish knowledge or intent. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim.App.1995); *see Hurtado*, 881 S.W.2d 738, 743 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd).

▆▆▆ Courts have identified many nonexhaustive factors that may help to show an affirmative link to contraband.[2] However, the *affirmative link* terminology does not constitute a unique legal rule, but is only a shorthand way of expressing what must be proven to establish that drugs were possessed knowingly or intentionally. *Brown*, 911 S.W.2d at 747. Indeed, the number of linking factors present is not as important as the "logical force" they create to prove that the crime was committed. *Hurtado*, 881 S.W.2d at 743 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd); *Whitworth*, 808 S.W.2d at 569.

### Legal Sufficiency Analysis

Our legal sufficiency analysis in this case turns on whether enough evidence existed for any rational juror to find beyond a reasonable doubt that appellant had

---

**2.** Among the factors this court has listed are whether the drugs were (1) in plain view; (2) conveniently accessible to the accused; (3) in a place owned by the accused; (4) in a car driven by the accused; (5) found on the same side of the car as the accused; or (6) found in an enclosed space; and whether (7) the drug's odor was present; (8) drug paraphernalia was in view of or found on the accused; (9) the accused's conduct indicated a consciousness of guilt; (10) the accused had a special relationship to the drug; (11) the car's occupants gave conflicting statements about relevant matters; (12) the physical condition of the accused indicated recent consumption of the drug found in the car; and (13) affirmative statements connected the accused to the drug. *Hurtado*, 881 S.W.2d at 743 n. 1.

knowledge of the presence of cocaine. Knowledge of the presence of cocaine is a required element to show possession as a principle actor. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (Vernon Supp. 2002). Knowledge of the presence of cocaine is also implicitly required to show that a party acted with the required intent to promote or assist the possession of another. *See* TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 1994); *cf. Stephens v. State*, 683 S.W.2d 23, 24 (Tex.App.-Dallas 1984), *aff'd*, 717 S.W.2d 338 (Tex.Crim.App.1986) (holding conviction as party for aggravated rape required knowledge of threat made by others).

■ Appellant argues that the trial evidence did no more than prove he was the unwitting driver of an automobile in which cocaine was being transported by others. The State, on the other hand, argues that sufficient evidence exists proving appellant knowingly possessed the cocaine. It points to several factors that have helped to show an affirmative link to drugs in other cases. Specifically, the State highlights appellant's role as driver of the car, differences in the stories told by the three occupants, appellant's relationship to Lee, changes in how appellant referred to Nixon, the amount of drugs involved, and the relative ages of the car occupants.

Each case must be examined on its own facts. *Hurtado*, 881 S.W.2d at 743; *Whitworth*, 808 S.W.2d at 569. A factor that contributes to sufficiency in one situation may be of little value under a different set of facts. *See Hurtado*, 881 S.W.2d at 743; *Whitworth*, 808 S.W.2d at 569 (both courts emphasizing "logical force" over mere presence of factors). We will examine all the factors possibly linking appellant to the cocaine in turn.

*Driver of the car*

■ The State first points out that appellant was the driver of a car in which some of the cocaine was found. Courts have often noted that this, when combined with other evidence, can be sufficient to uphold possession convictions. *See e.g. Hernandez v. State*, 538 S.W.2d 127, 131 (Tex.Crim.App.1976); *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). However, the evidence is not legally sufficient when the State merely shows that a defendant was driving a vehicle containing narcotics. *Harmond*, 960 S.W.2d at 406. This is consistent with the longstanding principle that the mere presence in the vicinity of illegal drugs, although circumstantial evidence to be considered, is insufficient to prove a possession charge by itself. *Hurtado*, 881 S.W.2d at 743; *see Rhyne v. State*, 620 S.W.2d 599, 601 (Tex.Crim.App. 1981); *Harvey*, 487 S.W.2d at 77. Thus, appellant's status as the driver of the car is insufficient on its own to prove possession, but may help show legal sufficiency if combined with other evidence.

*Different Stories Among Occupants*

When questioned by Trooper Taylor, appellant said that the trio was returning home to Beaumont from Houston. Lee and Nixon said the same thing. Appellant said he had gone to Houston for a job interview with Wal–Mart.[3] Lee said he went on the trip to visit his cousin.[4] Nixon said he went to a mall. Besides these different accounts of the trip's purpose, there were also different departure times given by the three. Appellant thought

---

**3.** When later asked how his interview went, appellant explained that he missed the interview.

**4.** After his arrest, Lee stated that they had gone to Houston because appellant had a job interview.

they left Beaumont around 1:30 or 2:00, Nixon said 1:00, and Lee, who appeared to Trooper Taylor to be intoxicated, said 4:00.

Differing stories may rightly raise the reasonable suspicion of an alert state trooper. *See Leday v. State,* 3 S.W.3d 667, 672 (Tex.App.-Beaumont 1999, pet. ref'd); *Walter v. State,* 997 S.W.2d 853, 861 (Tex. App.-Austin 1999), *rev'd on other grounds,* 28 S.W.3d 538 (Tex.Crim.App.2000) (citing *United States v. Shabazz,* 993 F.2d 431, 433 (5th Cir.1993)). The State, though, does not argue how these differences demonstrate an element of the crime for which appellant was convicted. We have noted in prior cases that when car occupants give conflicting statements about relevant matters this can be a factor helping to establish an affirmative link. *Hurtado,* 881 S.W.2d at 743 n. 1; *Gilbert,* 874 S.W.2d at 298. However, the actual facts of *Hurtado* and *Gilbert* did not involve any conflicting statements. We will look instead to *Duff v. State,* where the Court of Criminal Appeals first utilized this factor, and other analogous cases for guidance. 546 S.W.2d 283 (Tex.Crim.App.1977).

In *Duff,* the court affirmed the conviction of a car passenger for possession of marihuana. The passenger told a police officer he was a hitchhiker who had been picked up only five minutes before the car was stopped, while the driver said the passenger had accompanied him from Corpus Christi to Austin. *Id.* at 284. The *Duff* court described the conflict between the stories as a "circumstance implying guilt."[5] Although the *Duff* court did not specifically elaborate on how the conflict implied guilt, it probably viewed this as an attempt by the defendant to separate himself from a potentially incriminating scene, somewhat similar to physical flight. *Cf.*

*Valdez v. State,* 623 S.W.2d 317, 321 (Tex. Crim.App.1979) (holding flight alone is insufficient to support guilty verdict, but is circumstance raising inference of guilt); *Johnson v. State,* 773 S.W.2d 721, 727 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd) (same). Even with these directly contradictory stories, the presence of a strong marihuana odor in the car, and evidence suggesting marihuana seeds were on the floorboard, the *Duff* court described the case as a "close one" when it found a sufficient link between the appellant and the large amount of drugs in the car—a thirty-pound box of marihuana in the back seat and even more marihuana in the trunk. *Duff,* 546 S.W.2d at 288.

More recent narcotics cases have also examined inconsistent stories among car occupants. In *Dixon v. State,* the driver and passenger contradicted each other regarding the purpose of their trip. 918 S.W.2d 678, 680 (Tex.App.-Beaumont 1996, no pet.). The driver said the two were going to visit his sick mother, while Dixon stated that they were going to see Dixon's sick sister. *Id.* Further, Dixon stated that he knew the driver's mother, and she was doing fine. *Id.* The evidence also showed that Dixon was extremely nervous, and there was an absence of luggage for their claimed three-day trip. *Id.* at 681. The court held the evidence legally insufficient to link Dixon to fifteen pounds of marihuana found in a guitar case in the car's trunk. *Id.* at 681–82.

In *Davis v. State,* a drug possession conviction was affirmed, but different stories offered by car occupants appeared to play no part in the decision. 923 S.W.2d 781(Tex.App.-Beaumont 1996), *rev'd on other grounds,* 947 S.W.2d 240 (Tex.Crim. App.1997). Both the driver and passenger

---

**5.** Judge Phillips disagreed and stated, "[T]hese conflicting statements cannot be equated with the passenger's knowledge that his driver is carrying marihuana in the back seat or trunk." *Duff,* 546 S.W.2d at 289 (Phillips, J. dissenting).

described a trip from New York to Houston to explore real estate. Yet, while there was some evidence to suggest the passenger was employed by the driver, the passenger described herself to an officer as "just along for the ride." *Id.* at 784–85. The court mentioned the different stories as reasons for suspicion when it analyzed the constitutionality of the stop, but the opinion ignored any inconsistencies when discussing the legal sufficiency of the evidence. *Id.* at 786–787, 788.

Finally, in a similar case, the Corpus Christi Court of Appeals recently placed little value on conflicting statements given by three occupants in a car pulled over on Interstate 10 in Chambers County at approximately 8:30 p.m. *Jenkins v. State*, 76 S.W.3d 709, 714 (Tex.App.-Corpus Christi 2002, no pet.). Although all three occupants, two of whom were cousins, agreed they were returning from Houston, they gave conflicting stories about the length of their trip, much as appellant, Lee, and Dixon did here. *Id.* at 716–18. The court declared such inconsistencies about the length of the trip to be "not relevant" and noted that any inconsistencies were "clearly less than those in *Dixon.*" *Id.* The court held the evidence was legally insufficient to show that Jenkins, a passenger in the car, was guilty, either as a principal or a party, of possessing the 1,220 grams of cocaine or the 103.65 pounds of marihuana found secreted in the car. *Id.* at 715, 718–19.

Here, the differing statements highlighted by the State pertaining to the purpose and length of the trip are not connected to appellant's knowledge of the presence of the cocaine.[6] Neither were these statements potentially extraordinary attempts by the car's occupants to distance them-

selves from the crime scene, as in *Duff.* The record does not support that there were conflicting statements made on matters relevant to the elements of the crime. Under our facts, the inconsistent statements made by the car occupants do not help establish a link between appellant and the cocaine.

*Relationship to Lee*

Lee described appellant as his cousin in response to questioning from Trooper Taylor. Nixon also said appellant and Lee were cousins. No other evidence, except for appellant describing Lee as a "friend," exists in the record to shed light on the relationship between the two. The State argues that appellant's relationship to Lee is factor linking appellant to the cocaine, which was found near Lee's seat. We disagree. The State cites three cases for its proposition, but these cases are distinguishable.

In *D.R.H. v. State*, a minor was found alone in a room within arms length of small table on which cocaine was in plain view. 966 S.W.2d 618, 622 (Tex.App.-Houston [14th Dist.] 1998, no pet.). While the opinion does list "the accused's relationship to others with access to the contraband" as a factor to consider, the court appears to have considered family relationships only to show that the minor had access to both sides of the duplex in which he was found—he lived on one side, and his mother and cousin lived on the other side. *Id.* The opinion does not support the use of a family relationship as a factor tending to link one to drugs that are found near a relative.

In *Frierson v. State*, 1448 grams of methamphetamine were found under the bed in a bedroom shared by the appellant

---

**6.** We note that only the statements about the departure time are truly contradictory. The other statements, regarding the purpose of the trip, differ, but it is not inconceivable that all of the stated activities could have been a part of the trip.

and his live-in girlfriend. 839 S.W.2d 841, 845 (Tex.App.-Dallas 1992, pet. ref'd). Neither was in the room at the time. The court held that a jury could find at least joint possession of the drugs. *Id.* at 849. Even if we endorsed *Frierson's* implicit reasoning that sharing a bedroom demonstrates shared possession of its contents, it would not affect the case before us due to the great factual differences involved. Occupying a borrowed car temporarily with one's cousin is not comparable to sharing a bedroom with a girlfriend. Appellant was not a joint possessor with Lee simply because they were cousins.

The State also cites *Redman v. State,* where the accused was one of three men seen standing within arms length of 21.9 grams of cocaine in plain view in a kitchen sink. 848 S.W.2d 710 (Tex.App.-Tyler 1992, no pet.). *Redman* cites *Hernandez v. State,* 538 S.W.2d 127, 130 (Tex.Crim. App.1976) for the proposition that "an affirmative link may be shown if the accused is closely related to other persons in joint possession of the contraband or to those who owned or leased the premises where the contraband was found." *Redman,* 848 S.W.2d at 714. The court then noted appellant had maintained his friendship with the homeowner despite knowing that the homeowner had previously been convicted for a cocaine offense and knowing the house had been raided on other occasions. Apparently, the court reasoned that the knowledge gained through the friendship could help the jury infer that Redman knew that what he was looking at in the sink was cocaine. We do not think the *Redman* court meant to imply that appellant's friendship with the homeowner led directly to an inference of guilt. Such guilt by association would obviously be contrary to our system of justice. *See Wincott v. State,* 59 S.W.3d 691, 700–701 (Tex.App.-Austin 2001, pet. ref'd) (discussing guilt by association); *Martin,* 753

S.W.2d at 386 (holding mere presence where others possess drugs is insufficient for conviction).

*Hernandez,* the case relied on by the *Redman* court, is more analogous to our facts. There, appellant was the driver of a car and his brother was the passenger. *Hernandez,* 538 S.W.2d at 129. Marihuana was seen in the passenger side floorboard by the arresting officer. *Id.* at 129, 131. Additionally, there was drug paraphernalia throughout the car, including on the dashboard in front of appellant. *Id.*

No mention was made of the sibling relationship when the *Hernandez* court catalogued the evidence weighing against appellant. *Id.* at 131. Rather, the only mention of any family relationships is made when the court notes, without further explanation, that the car belonged to appellant's uncle. *Id.* at 130. Possibly, the court concluded the jury could infer appellant had some familiarity with the car given his relationship to the owner. This rationale does not apply here because Lee was not the owner of the Lincoln, and, in fact, the record tells us nothing about the owner of the car except his last name.

Here, the evidence, even taken in the light most favorable to the prosecution, suggested only that Lee was a cousin and friend of appellant. As we have shown, the cases cited by the State do not suggest that familial or friendship relationships are generally strong factors showing an affirmative link to contraband. While it is reasonable for the jury to infer that appellant may have been more familiar with what was in Lee's possession as opposed to knowing what a total stranger possessed, the power of this inference can only be very slight under our facts. Appellant's relationship to Lee does very little, by itself, to help to demonstrate that appel-

lant had knowledge of the drugs found near Lee.

### Denies Association with Nixon after Arrest

The State notes that, when first questioned by Trooper Taylor, appellant described the other occupants as "friends" of his. Later, after being arrested, appellant said he really did not know Nixon and they had just "picked him up off the highway." Appellant, however, did not deny his association with Lee, who had been sitting in the passenger seat, nearest the locations where the cocaine was found.

The State argues that appellant's conduct demonstrates a consciousness of guilt. We have previously noted that actions indicating a consciousness of guilt can be considered as factors helping to affirmatively link one to contraband. *Hurtado*, 881 S.W.2d at 743 n. 1. The logical force of this factor depends on the nature of the specific actions involved.

Although no evidence was presented to clarify the relationship between appellant and Nixon, we agree that the jury could have chosen not to believe appellant's videotaped statement and inferred that appellant was attempting to disassociate himself from Nixon. The situation is somewhat analogous to the statement given by the passenger in *Duff* that we have previously discussed. *See Duff*, 546 S.W.2d at 284 (passenger claimed to be hitchhiker). The jury could have found that this indicated a general consciousness of guilt.

A general consciousness of guilt does not prove appellant guilty of the specific crime with which he was charged. As with physical flight, this disassociation from Nixon would not be sufficient on its own to prove appellant's knowledge of the cocaine, but it could be considered in combination with other linking factors. *Cf. Valdez v. State*, 623 S.W.2d at 321 (holding

flight alone is insufficient to support guilty verdict, but is circumstance raising inference of guilt); *Johnson v. State*, 773 S.W.2d at 727 (same).

### Amount of Cocaine

The State asserts that the amount of drugs involved is a factor helping to link appellant to the cocaine. The amount of contraband found is a factor we can consider in determining if an affirmative link exists. *Villegas v. State*, 871 S.W.2d 894, 896 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). The power of this factor can reasonably be expected to increase as the amount of drugs increases. Thus, this factor is more effective at establishing an affirmative link as larger quantities are involved. *Cf. id.* at 896–97 (90 pounds of cocaine and 165 pounds of marihuana found throughout house); *Sosa v. State*, 845 S.W.2d 479, 483 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd) (eighteen-wheel truck carrying 600 kilograms of cocaine valued at over $60 million).

The cocaine found in the passenger side floorboard and outside the car combined to weigh approximately 24 grams. There was testimony that this amount of cocaine had a wholesale value of between $700 and $800 dollars and a retail value between $2,500 and $2,800. Clearly, this was not an insignificant amount of cocaine, but it was still small enough to be concealed on someone's person. We will consider the amount of cocaine along with the other evidence.

### Relative Ages of the Car Occupants

At the time of their arrests, appellant was 44 years old; Lee was 19; and Nixon was 18. The State argues, without authority, that we should consider the fact that appellant was significantly older than both Lee and Nixon as a factor linking appellant to the cocaine. The State's theory is that the jury could infer from appellant's

older age that he was the leader of the three, and this leadership position links him to the cocaine.[7]

However, the State's theory does not produce a reasonable inference. Before the jury could presume that appellant was the leader of the group, it would have to presume that the three were acting together as a group for a common purpose. There was no evidence, beyond their mere presence in the car together, suggesting that the three were working as a unit for any purpose. Another necessary presumption would be that the group's purpose was to transport drugs. At this point the State's theory becomes circular and conclusory—in order to prove that appellant knew of the drugs, the State suggests that he was the leader of a drug transporting group.

In some circumstances, relative ages might be relevant to a drug possession charge. For example, a prosecutor's assertion that an adult driver knew about drugs found near a passenger would carry much more weight if the passenger was 2 years old rather than 18. Here, however, all the occupants were adults and the State's theory that appellant's older age somehow links him to the cocaine is groundless.

**7.** A counter-argument could be made that the age difference indicated a generational separation between appellant and the two young passengers—possibly suggesting that appellant was unaware of the drug activity. While such a view might be considered in a factual sufficiency review, here we must view the evidence and reasonable inferences in the light most favorable to the verdict.

**8.** Additionally, even when holding the evidence legally sufficient, the Court of Criminal Appeals has described cases with much stronger evidence as "close." *See Duff*, 546 S.W.2d at 288 (appellant was passenger, very strong marihuana odor in car, marihuana seeds on the floor, conflicting stories, 30 pound box of marihuana in back seat with more in trunk) (Phillips, J. dissented); *Her-*

*Summary of Evidence and Conclusion*

In summary, appellant was the driver of a car containing two passengers; 24 grams of cocaine were later discovered in and near that car; the drugs were found near where appellant's cousin, Lee, had previously been seated; and the jury could have found that appellant displayed a general consciousness of guilt after his arrest when he disassociated himself from Nixon.

Our facts are similar to those of *Heltcel v. State*, 583 S.W.2d 791 (Tex.Crim.App. 1979). There, Heltcel was the driver of a car containing two passengers. After the car was pulled over for speeding, the officer noticed that the two passengers appeared nervous. He asked the backseat passenger, who was feigning sleep, to sit up. On the seat, under where the passenger was lying, were two brown paper bags containing "bricks" of marihuana. There was no evidence of an odor in the car. No other contraband was found in the car or on Heltcel's person. Heltcel did not make furtive gestures or appear to be nervous. The court concluded there was "no proof appellant had knowledge of the presence of contraband" and held the evidence legally insufficient. *Id.* at 792.[8]

*nandez*, 538 S.W.2d at 131 (appellant was driver, bag of marihuana in plain view on passenger side, car belonged to uncle, drug paraphernalia near appellant) (Onion, P.J., and Roberts, J. dissented). Along the same lines, the Fourteenth Court of Appeals recently described the knowledge element as "arguably close" in a case even though (1) the accused was the sole occupant and driver of the car; (2) the marihuana was found under the driver's seat; (3) appellant had the only set of keys to the car; (4) appellant had been driving the car for a couple of days; and (5) the drugs could be seen by anyone opening the rear passenger door. *Grant v. State*, 989 S.W.2d 428, 434 (Tex.App.-Houston [14th Dist.] 1999, no pet.)

Here, the fact that appellant was the driver of a car later found to contain cocaine is suspicious. Appellant's relationship to Lee and his attempted disassociation from Nixon might further raise suspicion. However, possession means more than "being where the action is." *Meeks v. State,* 692 S.W.2d 504, 511 (Tex.Crim. App.1985) (quoting *Wilkes v. State,* 572 S.W.2d 538 (Tex.Crim.App.1978)); *Williams v. State,* 859 S.W.2d 99, 101 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd). Proof amounting only to strong suspicion or mere probability will not suffice. *Dubry v. State,* 582 S.W.2d 841, 844 (Tex. Crim.App. [Panel Op.] 1979); *Grant v. State,* 989 S.W.2d 428, 433 (Tex.App.- Houston [14th Dist.] 1999, no pet.); *Williams,* 859 S.W.2d at 101–102.

There is nothing else to link appellant to the cocaine. He was not under the influence of drugs. In fact, no drugs of any kind, drug paraphernalia, or money was found on his person or near the driver's seat. There was no drug odor in the car. Appellant was cooperative throughout the stop and made no furtive gestures. The cocaine was not found until almost twenty minutes had passed since appellant got out of the car at Trooper Taylor's request, while Lee and Nixon remained inside dur-

ing much of that time. No statements were made by any of the three connecting appellant to the drugs.

In short, the State has presented a collection of potential linking factors, each of which might raise suspicion but is insufficient on its own to provide the required affirmative link between appellant and the cocaine. These factors, even when viewed together in the light most favorable to the verdict, do not create the logical force necessary to allow a rational juror to find, beyond a reasonable doubt, that appellant had knowledge of the presence of cocaine.

We sustain appellant's first issue presented and hold the evidence was legally insufficient to support the conviction. If a legal sufficiency challenge is sustained, then a judgment of acquittal must be rendered. *Clewis,* 922 S.W.2d at 133.

We, therefore, reverse the judgment and render a judgment of acquittal.[9]

---

9. Having rendered a judgment of acquittal, we need not address appellant's other issues presented for review.