Opinion issued January 27, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00085-CR

———————————

Carl Rogers, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 23rd District Court 

Brazoria County, Texas



Trial Court Case No. 53921

 



 

MEMORANDUM OPINION

          A
jury convicted appellant Carl Rogers of unlawful possession of a prohibited
substance, namely marijuana, in a correctional facility.  See Tex. Penal Code § 38.11 (Vernon Supp.
2010).  The court assessed punishment at 25
years’ confinement in prison pursuant to the habitual offender statute.  See Tex. Penal Code Ann. § 12.42(d)
(Vernon Supp. 2010).  Rogers appealed,
arguing that the evidence was legally and factually insufficient to support the
conclusion that he intentionally and knowingly possessed marijuana.  We modify the trial court’s judgment and
affirm as modified.

Factual Background

          Rogers was incarcerated at
the Trusty Camp, a dormitory for offenders who pose minimal security risks, at
the Darrington Unit in Brazoria County, Texas. 
On the morning of September 25, 2006, Rogers was returning to the Trusty
Camp from his work assignment at the bachelor officer quarters.  Rogers walked into the turnout shed, where
offenders are strip searched before entering and leaving the Trusty Camp.  Sergeant R. Mays ordered Rogers to
strip.  Rogers stated, “I can’t do that,”
and then stepped out of the turnout shed. 
Rogers testified that he had not expected to be strip searched because
he had only returned to obtain more cleaning supplies.  He claimed that when Sgt. Mays ordered him to
strip, he panicked and walked out of the shed because he did not want to be
caught with and punished for the small amount of chewing tobacco he had in his
shirt pocket.

          When Rogers
could not get the chewing tobacco out of his shirt pocket, he fled, and a foot-chase
ensued.  Sgt. Mays, Officer D. Foster,
and several other corrections officers pursued Rogers into a dayroom.  Wanting to avoid further punishment, Rogers
stopped running near the barbershop, which is located inside the dayroom, near
the television-watching area and the weight room.  Sgt. Mays testified that during the chase she
saw Rogers trying to pull a blue bag out of his shirt.  Officer Foster testified that she saw Rogers throw
two bags onto the floor in the barbershop, as well as something into the trash
can.  After searching the area of the
barbershop, Officer Foster recovered a blue plastic shopping bag, a white plastic
shopping bag, a potato chip bag, and a latex glove, and she gave those items to
Sgt. Mays.  Sgt. Mays handed this
evidence to Major Tucker who secured the items in his office until they were
collected by C. Cegielski, the criminal investigator.

          The other
inmates in the dayroom and barbershop area were ordered to leave.  Rogers was strip-searched by Officer T.
Yracheta, who found a thumbnail-sized piece of chewing tobacco in Rogers’s
shirt pocket.  No other contraband was
found on his person.

          C.
Cegielski, an investigator with the Office of the Inspector General, took the
evidence collected at the barbershop from Major Tucker and delivered it to the
Brazoria County crime laboratory.  Among
the contents delivered were six plastic bags containing a green, leafy
substance.  The director of the crime
lab, P. VanDorn, tested the contents and confirmed that they included 96.7
grams of marijuana.

Rogers was later charged with and convicted
of unlawful possession of a prohibited substance in a correctional
facility.  The court assessed punishment
at 25 years’ imprisonment. Rogers timely filed a notice of appeal, and he
argues on appeal that the State failed to present legally and factually sufficient
evidence to support the conclusion that he intentionally and knowingly
possessed marijuana.

Analysis

It is unlawful for a person to
possess a controlled substance or dangerous drug while in a correctional
facility or on property owned, used, or controlled by a correctional
facility.  Tex. Penal Code Ann. § 38.11(d)(1).  Rogers argues that the evidence supporting
his conviction is legally and factually insufficient to establish “possession,”
which requires proof that the defendant exercised actual care, custody,
control, or management of the substance and knew the matter possessed was
contraband.  See Tex. Penal Code Ann. §
1.07(39) (Vernon Supp. 2010).

I.                 
Legal sufficiency

Rogers contends that the evidence
is legally insufficient to establish that he possessed marijuana.  Specifically, Rogers argues that he did not
have exclusive possession of the place where the marijuana was found, and that
the State failed to establish independent facts and circumstances connecting
him to the marijuana.

In assessing legal sufficiency, we
determine whether, based on all of the record evidence viewed in the light most
favorable to the verdict, a rational jury could have found the essential elements
of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S.
307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).  Under the Jackson standard, evidence is insufficient to support a conviction
when, considering all
the evidence admitted at trial in the light most favorable to the verdict, a factfinder
could not have rationally found that each element of the charged offense was
proven beyond a reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct.
at 2789; In re Winship, 397 U.S. 358,
361, 90 S. Ct. 1068, 1071 (1970); Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  This standard of review is established under
two circumstances:  (1) the record
contains no evidence, or merely a “modicum” of evidence, probative of an
element of the offense; or (2) the evidence, viewed in the light most favorable
to the verdict, conclusively establishes a reasonable doubt.  See
Jackson, 443 U.S. at 314, 318 n.11,
320, 99 S. Ct. at 2789; Williams, 235
S.W.3d at 750; Laster v. State, 275
S.W.3d 512, 518 (Tex. Crim. App. 2009).  In
applying the Jackson standard of
review, an
appellate court must defer to the responsibility of the factfinder to fairly
resolve conflicts in testimony, to weigh evidence, and to draw reasonable
inferences from the facts.  See
Jackson, 443 U.S. at 319, 99 S. Ct. 2789; Williams, 235 S.W.3d at
750.  An appellate court presumes that the trier of fact resolved any conflicts
in the evidence in favor of the verdict and defers to that resolution, provided
that the resolution is rational.  See Jackson, 443 U.S. at 326,
99 S. Ct. 2793.  An appellate court may not re-evaluate the
weight and credibility of the record evidence and thereby substitute its own
judgment for that of the factfinder.  Williams,
235 S.W.3d at 750.  If an
appellate court finds the evidence insufficient under the Jackson standard, it must reverse the judgment and enter an order
of acquittal.  See Tibbs v. Florida, 457
U.S. 31, 41, 102 S. Ct. 221, 2218 (1982). 


To prove the offense of unlawful
possession of a prohibited substance in a correctional facility, the State must
prove that the defendant “possess[ed] a controlled substance or dangerous drug
while in a correctional facility or on property owned, used, or controlled by a
correctional facility.”  Tex. Penal Code § 38.11(d)(1).  To establish “possession,” the State was
required to show that Rogers (1) exercised actual care, custody, control, or
management of the substance and (2) knew the matter possessed was contraband. See Tex.
Penal Code Ann. § 1.07(39); Poindexter
v. State, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005).

When, as in this
case, the controlled substance was not discovered on the person of the
defendant when it was seized, it cannot be presumed that the accused had
possession of the substance unless there are independent facts and
circumstances tending to show that the accused knowingly possessed the
contraband.  Evans v. State, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006); Roberson v. State, 80 S.W.3d 730, 735
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  Such evidence can be either direct or
circumstantial, but it must establish that a defendant’s connection to the
contraband was more than fortuitous.  The
defendant’s presence or proximity to a controlled substance, when combined with
other evidence, may provide a “link” sufficient
to establish the element of possession beyond a reasonable doubt.  Evans, 202 S.W.3d at 162. 

Though not an
exhaustive list, the Court of Criminal Appeals has recognized the following
factors as links to establish possession: (1) the
defendant’s presence when a search is conducted; (2) whether
the contraband was in plain view; (3) the
defendant’s proximity to and the accessibility of the contraband; (4) whether
the defendant was under the influence of narcotics when arrested; (5) whether
the defendant possessed other contraband when arrested; (6) whether
the defendant made incriminating statements when arrested; (7) whether
the defendant attempted to flee; (8) whether
the defendant made furtive gestures; (9) whether
there was an odor of contraband; (10) whether
other contraband or drug paraphernalia was present; (11) whether
the defendant owned or had the right to possess the place where the contraband
was found; (12) whether the place
where the contraband was found was enclosed; (13) whether
the defendant was found with a large amount of cash; and (14) whether
the conduct of the defendant indicated a consciousness of guilt.  Id. at 162 n.12.

Rogers argues that
the State failed to establish independent facts and circumstances connecting him
to the marijuana found in the various containers collected in the prison
barbershop.  Specifically, he contends
that a rational jury could not find him guilty beyond a reasonable doubt of
possession of marijuana in a correctional facility because the testimony of the
State’s witnesses does not link the marijuana to any of the bags collected by
Officer Foster.  

The State argues
that there are sufficient links present to sustain his conviction.  Each of these links must be evaluated in
accordance with the legal sufficiency standard set out in Jackson.  See Evans, 202 S.W.3d at 161.  When looking at the evidence in a light most
favorable to the verdict, the State presented evidence for six of the above
fourteen factors.  These factors
constitute a shorthand way of expressing what must be proven to establish that
Roger’s knowingly possessed marijuana.  See Roberson,
80 S.W.3d at 735.  It is not, however,
the number of links that is dispositive, but rather, the logical force of all
of the evidence, both direct and circumstantial.  Evans,
202 S.W.3d at 162.

          Factors 1 and 3: Rogers’s presence when the
search was conducted, and his proximity to and the accessibility of the
contraband.  Sgt. Mays testified that
Rogers was concealing a blue plastic shopping bag under his shirt, and Officer
Foster testified that Rogers threw a blue plastic shopping bag and a white plastic
shopping bag, which were both under his shirt, onto the floor of the
barbershop.  Officer Foster also
testified that she saw Rogers throw “something” into the trash.  A blue bag, white bag, potato chip bag, and
glove were all recovered in the barbershop, and there were no other items on
the floor.  Rogers was also present in
the room when the marijuana was discovered.

          Factor 5 and 10: Possession of other contraband or drug
paraphernalia at time of arrest and whether other contraband was present.
 Rogers possessed other contraband,
including two cans of soda, a magazine, and a small piece of chewing tobacco,
all of which are prohibited items in a correctional facility.  Possession of tobacco in a correctional
facility is prohibited by law.  See Tex.
Penal Code Ann. § 83.11.  Chewing
tobacco was also found in the glove that Officer Foster recovered from the trash
can in the barbershop.

          Factors 6 and 14: Incriminating statements at time of arrest,
and conduct indicating consciousness of guilt.
 Rogers fled the turn-out shed and stated
“I can’t do it,” when Sgt. Mays told him to strip.  He did not stop running until the officers
cornered him in the barbershop area.  Officer Foster testified that he repeatedly
said “I didn’t do it,” as she conducted a search of the area around
Rogers.  Rogers testified that when he
stopped, he pulled off his shirt, held up the chewing tobacco in his hand, and
said, “I’ve just got Skoal.  I’ve got
some dip.”

          Viewing this evidence in the light
most favorable to the verdict, we hold that a rational trier of fact could have
found the essential elements of the offense, including the element of
possession, beyond a reasonable doubt. 
Accordingly, we overrule Rogers’s first issue.

II.              
Factual sufficiency

          In his
second issue, Rogers argues that the evidence is factually insufficient to
support his conviction.  Specifically he
contends that: (1) Officer Foster’s testimony
was inconsistent with the statement she made at the time of the event and was
“so weak that the verdict is clearly wrong and manifestly unjust”; (2) there
is no evidence connecting Rogers to the glove and the potato chip bag; (3) the
testimony of the State’s witnesses fails to connect the marijuana to any particular
bag collected at the scene of the incident; (4) there
is strong evidence indicating that the marijuana belonged to another inmate who
threw it when the Rogers was being chased through the dayroom; and (5) he
established a rational and more likely reason for avoiding the strip search.

We must consider all of the
evidence highlighted by Rogers in the light most favorable to the prosecution
and determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Brooks v. State, 323 S.W.3d 893, 894–95
(plurality op.), 926 (Cochran, J., concurring) (Tex. Crim. App. 2010).  We afford almost complete deference to a
factfinder’s decision when that decision is based upon an evaluation of
credibility.  Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).  The jury is in the best position to judge the
credibility of a witness because it is present to hear the testimony and assess
the demeanor of each witness, as opposed to an appellate court, which relies
only on the cold record.  Id.; see
Johnson v. State, 571 S.W.2d 170, 173 (Tex. Crim. App. 1978).  The jury is the sole judge of the credibility
of the witnesses and may accept or reject any part or all of the testimony
given by the State or defense witnesses. 
Johnson, 571 S.W.2d at
173.  Accordingly, the factfinder may
choose to believe some testimony and disbelieve other testimony.  Lancon,
253 S.W.3d at 707.

Officer Foster’s testimony was
somewhat inconsistent with a statement she made in 2006.  The evidence card that she completed
immediately after the incident indicated that contraband was recovered from the
trash can and in the dayroom.  The
evidence card did not reflect that anything was recovered from the floor of the
barbershop.  At trial she testified that
she was right behind Rogers when he stopped running and that she saw him throw
two bags, a white bag, which landed under the sink, and a blue bag, which
landed against the wall.  She also
testified that she saw him throw something in the trash can.  When she looked in the trash, she saw a latex
glove, which was later found to contain chewing tobacco.  On cross-examination, Officer Foster
reiterated that she saw Rogers throw something in the trash can, but she
admitted that there was other trash in the trash can that was not recovered.

Although Officer Foster’s testimony
at trial was not exactly the same as the information she provided on the
evidence card, the resolution of any inconsistency in her testimony goes to her
credibility, and the jury could have reasonably believed that she recovered the
blue and white bags from the floor of the barbershop rather than from the
dayroom as she indicated on the evidence card. 
See Lancon, 253 S.W.3d at 705;
see also Washington v. State, 127
S.W.3d 197, 204 (Tex. App.—Houston [1st Dist.] 2003, pet. dism’d) (discussing
jury’s role in resolving inconsistent testimony of a witness).

          Rogers
contends that there is strong evidence indicating that another inmate threw the
bag containing marijuana and that the reasons he articulated for running away
from Sgt. Mays reasonably explain his behavior. 
He also argues that there is no evidence connecting him to the glove or
to the potato chip bag and that the testimony of the State’s witnesses fails to
connect the marijuana to any particular bag collected at the scene of the
incident.  

Sgt. Mays, however, testified that
she saw Rogers attempt to remove a blue bag from under his shirt.  Officer Pickett testified that she entered
the dayroom behind Sgt. Mays and Officer Foster.  She did not see Rogers throw anything, but
she arrived after he stopped running. 
Officer Yracheta also arrived after Sgt. Mays and Officers Foster and
Pickett had cornered Rogers.  He
testified that he saw Officer Foster searching the area around the trash can
and that she was holding “something blue” in her hand.

Testimony from several inmates
suggested the possibility that the drugs recovered by the officers could have
come from another inmate present in the room at the time.  R. Johnson, an inmate who was in the weight
room when Rogers and the officers ran into the barbershop, testified that he
did not see Rogers throw anything into the trash can.  R. Johnson admitted, however, that his view
was somewhat obscured.  T. Johnson, an
inmate who was in the dayroom at the time of the incident, testified that he
did not see Rogers throw anything, also but stated that he did not see Rogers
run in.  J. Belden, who was the barber at
the time of the incident, recalled hearing the commotion.  He testified that it is common for inmates to
“get rid of contraband” by throwing it anywhere in the vicinity when they know
officers are coming.  From the window in
the barbershop, Belden saw the officers running outside, he heard someone come
through the door, and he felt something hit him.  When he looked down, he noticed a “little
bundle of something.”  He testified that
he did not see who threw the bundle.

Most of the witnesses arrived after
Rogers had stopped running, and they testified that they did not see, and were
not in a position to see, Rogers throw anything.  Officer Foster was the only witness who saw
the Rogers throw anything, and only Rogers denied that he threw anything.  None of the inmates who testified had a
clear, unobstructed view of Rogers or the barbershop.  Even Belden’s testimony—which Roger’s argues
supports his position—is equivocal because Belden felt the package hit him
shortly after Rogers ran into the barbershop but did not see who threw it.

In regards to the latex glove and
potato chip bag, Officer Foster testified that she saw Rogers throw something
into the trash, and when she looked down, she saw the glove on top of the other
trash in the trash can.  She also
testified that the glove was the only item recovered from the trash can.  Sgt. Mays testified that she received a blue
bag, a white bag, a potato chip bag, and a latex glove from Officer
Foster.  Officer Yracheta saw Officer
Foster with a blue package, as did Officer Pickett and T. Johnson.  Although no one testified specifically about
where the potato chip bag was found, Sgt. Mays, when she was asked about what
was found in the barbershop, stated, “Everything was in that blue [plastic
shopping] bag.”  Additionally, Officer
Foster testified that aside from the items collected and handed to Sgt. Mays,
there were no other items on the floor of the barbershop.  Major Tucker later testified that Sgt. Mays
gave him a package containing marijuana. 
The contents of the collected items were later tested, and VanDorn
confirmed that the package contained 96.7 grams of marijuana.  Although there were a number of inmates
present in the dayroom, no one testified that someone other than Rogers threw
the package containing marijuana.

Rogers’s challenges to the factual sufficiency of the
evidence are based on the credibility of the witnesses and the weight given to
their testimony—issues on which this Court must defer to the factfinder.  See
Lancon, 253 S.W.3d at 705.  Although
Rogers’s stated reasons for avoiding the strip search—his possession of tobacco
but not marijuana—are a reasonable explanation for his conduct given the
potentially negative consequences of being found in possession of chewing
tobacco, his behavior was equally consistent with the State’s theory that he
possessed marijuana, and the jury was free to believe or disbelieve his
explanation.  See Annis v. State, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979); McKinny v. State, 76 S.W.3d 463, 468–69
(Tex. App.—Houston [1st Dist.] 2002, no pet.). 
Considering all of the evidence adduced at trial in the light most
favorable to the prosecution, we conclude that a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Brooks,
323 S.W.3d at 894–95 (plurality op.), 926 (Cochran, J.,
concurring).  We therefore hold that the evidence is factually
sufficient to sustain the jury’s guilty verdict.

Reformation of the Judgment

Finally, we note
that the trial court’s judgment does not accurately comport with the record in
that it does not reflect that the trial court assessed Rogers’s punishment at
25 years in prison.  “[A]n appellate
court has authority to reform a
judgment to include an affirmative finding to make the record speak the truth
when the matter has been called to its attention by any source.” French v.
State, 830 S.W.2d 607, 609
(Tex. Crim. App. 1992) (citing Asberry v. State, 813 S.W.2d 526, 531
(Tex. App.—Dallas 1991, pet. ref’d)); accord Nolan v. State, 39 S.W.3d
697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (“An appellate court has
the power to correct and reform
a trial judgment ‘to make the record speak the truth when it has the necessary
data and information to do so . . . .’” (quoting Asberry, 813 S.W.2d at 529)); see also Tex. R. App. P. 43.2(b).  The record supports modification of the
judgment because the court reporter’s record reflects that the trial court
assessed Rogers’s punishment at 25 years. 
Accordingly, the trial court’s judgment is modified to reflect the
punishment assessed.

Conclusion

We modify the trial court’s judgment to indicate the punishment assessed,
and we affirm as modified.

                                                                   

Michael
Massengale

                                                                   Justice


 

 

Panel consists of Chief Justice Radack, Justice Massengale, and Justice
Nuchia.*

 

Do
not publish.  Tex. R. App. P. 47.2(b).











*               The Honorable Sam Nuchia, Senior Justice, Court of
Appeals for the First District of Texas, participating by assignment.