

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00179-CR

---

DALLAS CARL TATE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY
TRIAL COURT NO. 2013-0163M-CR

----------

## DISSENTING OPINION

----------

This is a straightforward possession case requiring a straightforward sufficiency analysis under *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979), which the majority fails to perform. Because the majority's analysis focuses on the links not proven by the State instead of on the links that were proven by the State; substitutes the majority's own weight- and credibility-of-the-evidence determinations for those of the jury; fails to view the evidence in the

light most favorable to the judgment; and disregards controlling, well-established precedent from the Texas Court of Criminal Appeals concerning what evidence will sufficiently link a defendant to contraband found in a vehicle, I am compelled to dissent.

The lynchpin of the majority's reverse-and-acquit sufficiency analysis is the absence of evidence that Officer Beckham observed the syringe of methamphetamine in the cubbyhole[1] in the front console of the car when he approached the driver's-side door of the car after he had stopped Tate. From the absence of this evidence, the majority extrapolates that the syringe of methamphetamine must not have actually been located in the cubbyhole when Tate was stopped and instead must have been placed there by one of the female passengers[2] during an approximately five-minute interval after Tate was asked to step out of the car and before the women were asked to step out of the car. The errors in this analysis by the majority are threefold.

First, instead of analyzing the links that were proven by the State, the majority focuses on its own view of what was not proven. This type of sufficiency analysis in possession cases has been expressly disavowed by the Texas Court

---

[1]Officer Beckham testified that he found the syringe in "the cubbyhole underneath the air conditioner, heater controls in that vehicle."

[2]The two female passengers were friends of Tate's. Bonita Proctor, the front-seat passenger, was Tate's former girlfriend; Sherita Yvonne Hale, the back-seat passenger, was a friend of Proctor's. The trio was on the way to Proctor's house at the time of the stop.

of Criminal Appeals. *Compare Evans v. State*, 202 S.W.3d 158, 164 (Tex. Crim. App. 2006) (explaining that court of appeals's sufficiency analysis erroneously discussed links that might have connected the defendant to the drugs but did not exist in the case and disregarded the links that were proven by the State), *with Tate v. State*, No. 02-14-00179-CR, slip op. at 8–9 (Tex. App.—Fort Worth May 14, 2015, no pet. h.) (conducting sufficiency analysis by discussing links that might have connected Tate to the drugs but did not exist in the case and disregarding the links that were proven by the State—"there is no evidence that the syringe was in plain view or accessible to Tate"; "[a]lso absent from the record is any evidence that the syringe was not in the possession of Proctor or Hale"; "there is no evidence indicating when he [Officer Beckham] performed that search [of the purses]"; "[t]here is no evidence that Sergeant Beckham saw the syringe from his vantage point when he first approached the vehicle"; etc.); *see also Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995) (explaining that in light of court of criminal appeals's abandonment of "outstanding reasonable hypothesis methodology" in 1991, defendant's link to drugs he allegedly possessed "need no longer be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt").

Second, although reciting the proper standard of review, the majority fails to apply it; the majority fails to view the evidence in the light most favorable to the jury's verdict and instead substitutes its own weight and credibility determinations of the evidence for that of the jury. *See Isassi v. State*, 330 S.W.3d 633, 638

(Tex. Crim. App. 2010) (reversing court of appeals's judgment of acquittal because court of appeals's sufficiency analysis did not view the evidence in the light most favorable to the jury's verdict or give deference to the jury's weight- and credibility-of-the-evidence determinations). For example, the majority fails to mention that Tate testified that he had his driver's license and proof of insurance out and ready when Officer Beckham approached the driver's-side window of the car. Tate also testified that Officer Beckham's first words to Tate were, "Step out of the vehicle."[3] A reasonable inference exists that the syringe of methamphetamine was in the cubbyhole at the time Officer Beckham stopped Tate for outstanding warrants but that Officer Beckham did not notice it during the extremely short time he stood near the driver's-side window before he asked Tate to get out of the car and escorted Tate to a position at the rear of the vehicle. Also, the syringe of methamphetamine was admitted into evidence. The jury was free to infer from viewing the syringe that it was small enough that it could roll deep enough within the cubbyhole that it would not be visible to a person standing at the driver's-side window. Only Tate testified that it would be

---

[3]On direct examination Tate testified:

 Q. And did the officer speak to you when he arrived at your vehicle?

 A. Yes. I think I already had my license and insurance ready. He walked up and immediately asked me to step out of the car.

visible; the jury was free to not believe his testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872 (1988).

Even more importantly, the jury rejected the very same view of the evidence that the majority accepts. At trial, Tate put forward his theory that one of the female passengers must have placed the syringe in the cubbyhole after he had exited the vehicle. Tate testified that the syringe could not have been in the cubbyhole when Officer Beckham stopped him because if it had been there, he (Tate) would have gotten rid of it. Tate testified:

> Q. Okay. Now, Mr. Tate, when you were removed from the car, were you aware that there was a syringe in your car?
>
> A. No, ma'am.
>
> Q. If you had a syringe, what would your actions have been when you knew the police officer was pulling you over?
>
> A. If I had had one?
>
> Q. Yes, sir.
>
> A. I'm not sure. I probably would have thrown it out or, at least, squirted the contents out of it. I don't know. I wouldn't -- I would hate to answer that without being put in that position.
>
> Q. So what you're saying is, you basically would not have left it in a center compartment open to plain view if you had had it?
>
> A. Absolutely not.

Tate testified that he had learned about the syringe of methamphetamine found in his car after he was placed in jail. He said that he wondered to himself which of the female passengers had placed it there.

5

On cross-examination, the prosecutor undermined Tate's theory by questioning why Tate—who admitted he had a prior conviction for possession—would dispose of the syringe if he had known about it, but Tate's two female friends—whom Tate testified also had prior possession convictions—would not have disposed of the syringe but would instead have set him up. Tate testified on cross-examination:

Q. And you said you were not aware of a syringe. You would have thrown it out or squirted its contents if you had been aware of it?

A. Yes, ma'am.

Q. You would have hidden it from police?

A. Hidden the syringe?

Q. Yes.

A. I wouldn't say hide it. I just didn't want it -- wouldn't have it -- wouldn't have had it on me.

Q. So you would have planted it on someone else?

A. Oh, no.

Q. No? You would have gotten rid of the evidence so you wouldn't --

A. True.

Q. -- have been charged; is that correct?

A. Correct.

Q. So what you're claiming is, even though you would have thrown the syringe somewhere or squirted the contents out or put it somewhere where it couldn't easily be seen, you're saying that the other two women would have put it somewhere where it could have

6

easily been seen instead of doing the same thing [that you would have done]; is that right?

Officer Beckham testified that after the stop, the women consented to a search of their purses; he searched the purses and found no contraband. The jury could have reasonably inferred that the women would not carry a syringe with a needle on their person or in their pockets and that because the syringe was not found in the women's purses, it was in the cubbyhole all along. In short, the majority's analysis fails to apply the proper *Jackson v. Virginia* standard of review; the majority's analysis does not view the evidence in the light most favorable to the jury's verdict and does not defer to the jury's weight- and credibility-of-the-evidence determinations. *See Evans*, 202 S.W.3d at 164.[4]

Third, the law is well-settled that links like the links that were proven by the State in this case are sufficient to meet the State's burden of establishing that Tate exercised actual care, custody, control, or management over the syringe of methamphetamine and knew that the syringe contained methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.002(38) (West Supp. 2014) (setting forth

---

[4]The court of criminal appeals in *Evans* reversed the court of appeals's judgment of acquittal in a possession case because:

> The jury presumably went through exactly the same weighing of evidence, credibility assessments, and alternative-explanation exercises [as that set forth in the court of appeals's opinion] and came to the opposite conclusion, *i.e.*, appellant *was* connected to the drugs. . . . Under federal and Texas law, juries trump both trial and appellate judges on weight-of-evidence determinations.

202 S.W.3d at 164.

definition of possession). Viewed in the light most favorable to the jury's verdict, the evidence establishes that the syringe of methamphetamine was found in plain view in an open cubbyhole in the car's console, was conveniently accessible[5] to Tate—even Tate testified that the cubbyhole was accessible to the driver of the car, was found in a car that Tate claimed to own, and was found in a car driven by Tate. *See Evans*, 202 S.W.3d at 162 n.12 (listing these possible links); *Roberson v. State*, 80 S.W.3d 730, 735 n.2 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (same); *Villegas v. State*, 871 S.W.2d 894, 897 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (same). Viewed in the light most favorable to the jury's verdict, the evidence also establishes that about five minutes after Tate was asked to step out of the vehicle, the female passengers were asked to step out of the vehicle; that before the female passengers were asked to step out of the vehicle, their purses were searched and found to contain no contraband; that the female passengers themselves were subsequently searched by Trooper Rachel Russell when she arrived and that no contraband was found; and that although the front-seat passenger was moving around a lot

---

[5]The term "conveniently accessible" means that the contraband must be within the close vicinity of the accused and easily accessible while in the vehicle so as to suggest that the accused had knowledge of the contraband and exercised control over it. *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.— Houston [1st Dist.] 2005, pet. ref'd).

in the car before she was asked to step out of the vehicle,[6] Officer Beckham did not observe her reach forward toward the front console near the cubbyhole. Thus, a reasonable inference exists that one of the female passengers did not remove the syringe of methamphetamine from her purse or off of her person and place it in the cubbyhole and that the syringe was in the cubbyhole all along.

Tate himself provided testimony allowing the jury to reasonably infer that, even if one of the women had possessed the syringe of methamphetamine, she would have hidden it or ejected its contents, not placed it in plain view in the car. The logical force of the combined evidence and reasonable inferences therefrom—when viewed in its totality in the light most favorable to the verdict and with deference to the jury's weight- and credibility-of-the-evidence determinations—is sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Tate exercised actual care, custody, control, or management of the syringe of methamphetamine and that his relationship to it was more than merely fortuitous.[7] *See* Tex. Health & Safety Code Ann.

---

[6]Proctor, the front-seat passenger, did not testify, so no direct explanation exists in the record for her movement within the car; however, Officer Beckham testified that there was a dog in the car with the trio.

[7]I cannot agree with the majority's assertion that the facts here bear a striking resemblance to the facts in *Roberson*, 80 S.W.3d at 741–42. In *Roberson*, the drugs were not found in an area of the car conveniently accessible to the defendant-driver, like the syringe was conveniently accessible to Tate as the driver of the car. *Id.* (explaining that a "full cookie" of crack cocaine was found on the passenger side floorboard near the door and that a "half cookie" of crack cocaine was found on the roadway a few inches from the car on the passenger side). Additionally, in *Roberson*, evidence existed linking only the

9

§ 481.002(38); *see also, e.g., Evans*, 202 S.W.3d at 163 (reversing acquittal judgment and noting that evidence—sixteen grams of cocaine was located on coffee table one foot directly in front of where defendant was sitting—constituted "two extremely strong 'presence' and 'proximity' links"); *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981) (holding evidence sufficient to support driver's possession conviction based on baggie of marijuana found in defendant's car in plain view on floor between driver's seat and car door despite evidence that defendant's car was used by a business as a delivery car).[8]

---

front-seat passenger to the cocaine, not the defendant-driver; while here, evidence exists linking only Tate to the syringe of methamphetamine, not the front-seat passenger. *See id.* (explaining that the evidence linked the front-seat passenger to the cocaine because the front-seat passenger appeared to be under the influence of drugs, was sitting where the "full cookie" of cocaine was found, and had exited the vehicle near where the "half cookie" of cocaine was found, and the driver never went to the passenger side of the exterior of the vehicle during the stop and appeared sober).

[8]The legal analysis concerning the sufficiency of the evidence to establish that a driver, driving a car he claims to own, exercised actual care, custody, control, or management over contraband found in his car in a location that is easily accessible to the driver coupled with other circumstantial evidence is so well-established that many cases on this issue are not published. *See, e.g., Otto v. State*, No. 08-04-00249-CR, 2005 WL 1940276, at *5 (Tex. App.—El Paso Aug. 11, 2005, no pet.) (not designated for publication) (holding evidence legally sufficient to support driver's possession conviction based on evidence that he told officer he was the owner of the vehicle and that inventory search revealed contraband underneath plastic molding of gear shift console—a location in close proximity to and easily accessible by driver; court focused on the degree to which this evidence linked driver to contraband and declined to focus on the number of links or the lack of additional links, such as the absence of furtive gestures, incriminating statements, drug paraphernalia, fingerprints, weapons, or drugs found on driver's person or that passenger had access to vehicle); *McClanahan v. State*, No. 05-03-00115-CR, 2003 WL 22663801, at *2 (Tex. App.—Dallas Nov. 12, 2003, pet. ref'd) (not designated for publication) (holding evidence

For all of these reasons, I respectfully dissent. I would affirm the judgment of the trial court.

/s/ Sue Walker
SUE WALKER
JUSTICE

PUBLISH

DELIVERED: May 14, 2015

---

sufficient to support driver's possession conviction based on baggie of cocaine found in defendant's car on driver's seat although two passengers were in the car); *Fowler v. State*, No. 08-01-00409-CR, 2002 WL 1732598, at *3 (Tex. App.––El Paso July 25, 2002, no pet.) (not designated for publication) (holding evidence sufficient to support driver's possession conviction based on marihuana found in cupholder in center console of defendant's car although front-seat passenger was in the car); *see also Parra v. State*, No. 03-04-00643-CR, 2006 WL 1649029, at *4–5 (Tex. App.—Austin June 15, 2006, no pet.) (mem. op., not designated for publication) (holding evidence legally sufficient to support driver's conviction because the jury, as the exclusive judge of the credibility of the witnesses, was entitled to believe officer's testimony that he was watching the passengers who remained in the car after appellant was arrested and placed in patrol car and that officer would have seen any attempt by the passengers to stash the drugs in the manner and location where they were found).